## JUDGE BATTS

LAW OFFICES OF SIMON HARTER, ESQ. **09 CIV    7175**
Simon Harter (SH-8540)
304 Park Avenue South – 11th Floor
New York, New York 10010
(212) 979-0250 – Phone
(212) 979-0251 – Fax
Attorneys for Plaintiff,
VOYAGER OCEAN SERVICES LTD.



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x

VOYAGER OCEAN SERVICES LTD.,                     :
                                                 :
                              Plaintiff,         :
                                                 :
              -against-                          :
                                                 :    **VERIFIED COMPLAINT**
COMETAS SHIPPING COMPANY,                        :
                                                 :
                              Defendant.         :
-------------------------------------------------------x

Plaintiff, VOYAGER OCEAN SERVICES LTD., by its Attorneys, Law

Offices of Simon Harter, Esq., as and for its Verified Complaint against the named

Defendant, COMETAS SHIPPING COMPANY, alleges upon information and belief as

follows:

1.    This is an admiralty and maritime claim within the meaning of Rule 9(h)

of the Federal Rules of Civil Procedure, in that it involves claims for breach of a

maritime contract of charter party. This case also falls under this Court's admiralty and

maritime jurisdiction pursuant to 28 U.S.C. §1333, and this Court's federal question

jurisdiction pursuant to 28 U.S.C. §1331. Finally, this Court also has jurisdiction over

this matter because the action also arises under the Federal Arbitration Act, 9 U.S.C. § 1,

*et seq.*, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.*

2.      At all times relevant hereto, Plaintiff, VOYAGER OCEAN SERVICES LTD. (hereinafter "Plaintiff") was and still is a foreign business entity, duly organized and existing under the laws of a foreign country, with a registered office at 80 Broad Street, Monrovia, Liberia.

3.      At all times relevant hereto, Defendant, COMETAS SHIPPING COMPANY (hereinafter "Defendant"), was and still is believed to be a foreign business entity, duly organized and existing under the laws of a foreign country, with a registered office and/or principal place of business at 6, Gagarina Street, 87510 Mariupol, Ukraine.

4.      On or about June 16, 2004, Plaintiff, in the capacity as charterer, entered into a maritime contract of charter party, written on an amended BIMCO form, with Defendant, in the capacity of owner, pursuant to which Defendant agreed to let, and Plaintiff agreed to bareboat charter the Motor Vessel DONBASS, for a period of 30 months, plus or minus 30 days, at a hire rate of US $1,000.00 per day pro rata.  A copy of the charter party is attached hereto as Exhibit "A" and incorporated by reference herein.

5.      The charter party provides, in Clause 8, that "[a] complete inventory of the Vessel's entire equipment, outfit, appliances and of all consumable stores on board the Vessel shall be made by the Charterers in conjunction with the Owners on delivery and again on redelivery of the Vessel.  The Charterers and the Owners, respectively,

shall at the time of delivery and redelivery take over and pay for all bunkers, lubricating oil, water and unbroached provisions, paints, oils, ropes and other consumable stores in the said Vessel."

6.   In accordance with the charter party, on or about July 11, 2009, Plaintiff redelivered the Vessel to Defendant.

7.   Subsequently, Plaintiff requested payment from Defendant for the value of the stores, spares and tools that remained aboard the Vessel following redelivery. A copy of Plaintiff's summary and list of ordinary spares, stores and tools, valued at US $263,082.31, is attached hereto as Exhibit "B" and incorporated by reference herein. A copy of Plaintiff's list of dry dock spares, valued at US $197,521.80, is attached hereto as Exhibit "C" and incorporated by reference herein.

8.   On or about August 6, 2009, Plaintiff's London counsel again advised Defendant of the claimed stores, spares and tools that remained aboard the Vessel and demanded compensation for their value. A copy of Plaintiff's London counsel's correspondence to Defendant is attached hereto as Exhibit "D" and incorporated by reference herein.

9.   Despite demand for payment, Defendant has failed to make payment in the amount now due and owing under the charter party.

10.   By virtue of its failure to pay for the stores, spares and tools that remained aboard the Vessel following redelivery, Defendant is in breach of the charter party.

11.     As a consequence of the foregoing, Plaintiff has suffered damages totaling US $460,604.11, representing the value of stores, spares and tools that remained aboard the Vessel following redelivery

12.     The charter party provides, in Box 33 and Clause 26.1, that any disputes arising thereunder shall be according to English law and referred to arbitration in London, England.

13.     Plaintiff specifically reserves the right to arbitrate the substantive matters in dispute pursuant to the aforementioned arbitration provision and expects to commence arbitration proceedings within two months.

14.     In addition to an attachment in the full amount of the claims as outlined above, Plaintiff also seeks attachment over an additional sum to cover its anticipated attorneys' fees, costs and interest, all of which are recoverable in London arbitration.

15.     Plaintiff estimates that it will take approximately three years before an arbitration award is likely to be rendered in the instant action.  As a result of the global economic downturn, arbitrators have recently faced substantial increases in defaults and Rule B applications, which has resulted in a backlog of arbitration proceedings and will substantially delay the time before any hearing in this matter will commence. Afterwards, it is not unusual for a lapse of six months to pass before a tribunal will publish the award.  Based upon the foregoing, Plaintiff believes that the three year estimate is a reasonable calculation.

16.     Given this time frame, Plaintiff estimates, as nearly as can be computed, these additional damages/costs to be US $285,020.39, comprised of interest in the sum

of US $115,020.39 (computed on the principal amount sought at a rate of seven and on-half percent (7.5%) for a period of three years); US $120,000.00 in estimated U.K. counsel and solicitor fees; and US $50,000.00 in estimated arbitrators' fees, which will be incurred in conjunction with the London arbitration, and which are recoverable under English law.

17.    Based upon the foregoing, the sum total sought to be attached in this action is US $745,624.50, consisting of Plaintiff's principal claim of US $460,604.11, interest of US $115,020.39 and recoverable legal fees and costs in the London arbitration of US $170,000.00.

18.    The charter party in this case requires hire to be made in U.S. Dollars. This requirement is consistent with the common practice in the worldwide vessel chartering business for payments to be made in U.S. Dollars.

19.    Defendant is believed to be currently engaged in the active chartering of vessels and upon information and belief, the Motor Vessel DONBASS has since been bareboat chartered to another entity following Plaintiff's redelivery.

20.    Any payment to Defendant of charter hire or other sums from a non-domestic entity, or any payment by Defendant to a non-domestic entity, made in U.S. Dollars and effected by international electronic funds transfer, must pass through an intermediary bank, or banks, primarily in New York City.  The Clearing House Interbank Payment System ("CHIPS") represents that it processes 95% of those transfers.

21.    On the basis of the foregoing, Plaintiff submits that one or more electronic funds transfers in U.S. Dollars will be made to, or from, Defendant, and will be routed through an intermediary bank or banks in New York City, within the next month or months and will be subject to attachment by Process of Maritime Attachment and Garnishment issued pursuant to Supplemental Rule B.

22.    The named garnishee banks participate in the CHIPS system in New York to send U.S. Dollar wire transfers between banks in the United States and throughout the world.

23.    Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, but Plaintiff avers, on information and belief, that Defendant has, or will have during the pendency of this action, assets within this District comprising, *inter alia*, cash, funds, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, or any other tangible or intangible property, of, belonging to, due, claimed by or being held by or for the benefit of Defendant (hereinafter "assets"), located at, moving through, or held by, any garnishee(s) located within this District, including but not limited to HSBC (USA) Bank; Bank of America N.A.; The Bank of New York Mellon; Citibank N.A.; JPMorganChase Bank; Standard Chartered Bank; Wachovia Bank N.A.; Deutsche Bank AG; Barclays Bank PLC; UBS A.G.; Credit Suisse; Nordea Bank Finland PLC; Fortis Bank SA/NV; ABN-AMRO Bank N.V.; American Express Bank Ltd.; Bank of China, Royal Bank of Scotland, and/or others.

24.    Plaintiff respectfully requests that this Honorable Court retain jurisdiction over this matter, pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.*, in the event it is necessary to seek further order of this Court in respect of the London arbitration proceeding between the parties and/or the confirmation and enforcement of any awards issued therein.

**WHEREFORE**, Plaintiff, VOYAGER OCEAN SERVICES LTD., prays:

a.    That process in due form of law according to the practice of this Court may issue against Defendant, COMETAS SHIPPING COMPANY, citing it to appear and answer the foregoing, and failing such appearance and answer, to have judgment by default against the Defendant in the principal amount of the claim, plus interest, costs and recoverable attorneys' fees and costs;

b.    That if Defendant cannot be found within this District pursuant to Supplemental Rule B, that all assets of Defendant, up to and including the sum of US $745,624.50, may be restrained and attached, including but not limited to any cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due, or for the benefit of, Defendants, including but not limited to such assets as may be held, received or transferred in their own name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking institutions including but not limited to HSBC (USA) Bank, Bank of America, The Bank of New York Mellon, Citibank N.A., JPMorganChase Bank, Standard Chartered Bank, Wachovia Bank N.A., Deutsche Bank AG, Barclays Bank PLC, UBS A.G., Credit Suisse, Nordea Bank Finland PLC, Fortis Bank SA/NV, ABN-AMRO Bank N.V., American Express Bank Ltd., Bank of China, Royal Bank of Scotland and/or any other garnishees(s) upon whom a copy of the Process of Maritime Attachment and Garnishment issued in this action may be served;

c.    That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary in order to give effect to the London arbitration; and

    d.    For such other, further and different relief as this Court may deem just and proper in the circumstances.

Dated:  August 13, 2009

LAW OFFICES OF SIMON HARTER, ESQ.
Attorneys for Plaintiff,
VOYAGER OCEAN SERVICES LTD.

By:        _____

Simon Harter (SH-8540)
304 Park Avenue South – 11th Floor
New York, New York 10010
(212) 979-0250 (Phone)
(212) 979-0251 (Fax)

## ATTORNEY VERIFICATION

STATE OF NEW YORK    )
                               ) ss.:
COUNTY OF NEW YORK   )

          SIMON HARTER verifies the following pursuant to 28 U.S.C. §1746:

      1.     I am a member of the Law Offices of Simon Harter, Esq., Attorneys for Plaintiff, VOYAGER OCEAN SERVICES LTD., in this action and a Member of the Bar of this Honorable Court. I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

      2.     The sources of my information and the grounds for my belief are communications, information, and documentation provided by the Plaintiff and/or its duly authorized agents.

      3.     The reason this Verification is made by an attorney and not the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

      I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 13th day of August, 2009.


                                      Simon Harter (SH-8540)
Law Offices of Simon Harter, Esq.
304 Park Avenue South – 11th Floor
New York, New York 10010
(212) 979-0250 - Phone
(212) 979-0251 - Fax

# EXHIBIT "A"

| THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO) STANDARD BAREBOAT CHARTER CODE NAME: "BARECON 89" | |
|---|---|

PART I

| 1. Shipbroker | 2. Place and date: **MARIUPOL, 16.06.2004** |
|---|---|
| **N/A** | |

| 3. Owners/Place of business | 4. Bareboat Charterers (Charterers)/Place of business |
|---|---|
| **COMETAS SHIPPING COMPANY 6, GAGARINA STREET, 87510 MARIUPOL, UKRAINE** | **VOYAGER OCEAN SERVICES LTD., MONROVIA, REPUBLIC OF LIBERIA** |

| 5. Vessel's name, Call Sign and Flag (Cl. 9(c)) | **MV DONBASS, URND, UKRAINE** | |
|---|---|---|

| 6. Type of Vessel | **DRY CARGO SHIP** | 7. GRT/NRT | **9242/6184** |
|---|---|---|---|

| 8. When/Where built **1979, EMPRESA NACIONAL BAZAN DE CONSTRUCCIONES NAVALES MILITARES, S.A., FERROL, SPAIN** | 9. Total DWT (abt.) in metric tons on summer freeboard **14 880 MT** |
|---|---|

| 10. Class (Cl. 9) **LLOYD'S REGISTER OF SHIPPING** | 11. Date of last special survey by the Vessel's classification society **19.05.1999** |
|---|---|

| 12. Further particulars of Vessel (also indicate minimum number of months' validity of class certificates agreed acc. to Cl.14) |
|---|
| L.O.A : 149,32 M<br>BEAM : 19,20 M<br>DRAFT : 8,969 M                 Class certificates validity:      **17.08.2004** |

| 13. Port or Place of delivery (Cl.2) **DOP AT PORT OF BIZERTE, TUNISIA SEE CL.27** | 14. Time for delivery (Cl. 3) **SEE CL.27** | 15. Cancelling date (Cl. 4) **15 DAYS FROM READINESS DATE** |
|---|---|---|
| | 16. Port or Place of redelivery (Cl.14) **WORLDWIDE** | |

| 17. Running days' notice if other than stated in Cl.3 **TO BE MUTUALLY AGREED** | 18. Frequency of dry-docking if other than stated in Cl.9(f) **30 MONTHS** |
|---|---|

| 19. Trading Limits (Cl. 5) **WORLDWIDE WITHIN I.W.L.** | **SEE CL.35** |
|---|---|

| 20. Charter period **30 MONTHS PLUS/MINUS 30 DAYS** | 21. Charter hire (Cl.10) **USD 1000 PER DAY PRO RATA** |
|---|---|

| 22. Rate of interest payable acc. to Cl.10(f) and, if applicable, ace. to PART IV **N/A** | 23. Currency and method of payment (Cl.10) **USD** BY THE INTERNATIONAL BANK REMITTANCE TO THE OWNERS BANK ACCOUNT (SEE CL.39) AT THE LAST "BUSINESS DAY" OF EACH MONTH (SEE CL.40) |
|---|---|

## "BARECON 89" Standard Bareboat Charter

PART
1

| 24. Place of payment; also state beneficiary and bank account (Cl.10)<br><br>SEE CL.39 | 25. Bank guarantee/bond (sum and place) (Cl.22) (optional)<br><br>N/A |
|---|---|
| 26. Mortgage(s), if any, (state whether Cl.11(a) or (b) applies; if 11(b) applies state date of Deed(s) of Covenant and name of Mortgagee(s)/Place of business) (Cl. 11) )<br><br>N/A | 27. Insurance (marine and war risks) (state value acc. to Cl.12(f) or, if applicable, ace. to Cl.13(k)) (also state if Cl.13 applies)<br><br>USD 1,700,000.00 |
| 28. Additional insurance cover, if any, for Owners' account limited to (Cl.12(b)) or, applicable (Cl.13(g))<br><br>N/A | 29. Additional insurance cover, if any, for Charterers' account limited to (Cl.12(b)) or, if applicable, (Cl.13(g))<br><br>N/A |
| 30. Latent defects (only to be filled in if period other than stated in Cl.2)<br><br>N/A | 31. War cancellation  (indicate countries agreed) (Cl.24)<br><br>UKRAINE, USA, RUSSIA, UNITED KINGDOM, CYPRUS |
| 32. Brokerage commission and to whom payable (Cl.25)<br><br>NONE | |
| 33. Law and arbitration (state 26.1, 26.2, or 26.3 of Cl.26 as agreed; if 26.3 agreed, also state place of arbitration) (Cl. 26)<br><br>ENGLISH LAW CLAUSE 26.1 APPLIES | 34. Number of additional clauses covering special provisions, if agreed<br><br>14 (CLAUSES 27-40) |
| 35. Newbuilding Vessel (indicate with "yes" or "no" whether Part III applies) (optional) | 36. Name of place of Builders (only to be filled in if Part III applies) |
| 37. Vessel's Yard Building No. (only to be filled in if Part III applies) | 38. Date of Building Contract (only to be filled in if Part III applies) |
| 39. Hire/Purchase agreement (indicate with "yes" or "no" whether Part IV applies) (optional) | 40. Bareboat  Charter Registry (Indicate with "yes" or "no" whether Part V applies) (optional) |
| 41 . Flag and Country of the Bareboat Charter Registry (only to be filled in if Part V applies) | 42. Country of the Underlying registry (only to be filled in if Part V applies) / |

PREAMBLE. - It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include PART I and PART II. In the event of a conflict of conditions, the provisions of PART I shall prevail over those of PART II to the extent of such conflict but no further. It is further mutually agreed that PART III and/or PART IV and/or PART V shall only apply and shall only form part of this Charter if expressly agreed and stated in Boxes 35,39 and 40. If PART III and/or PART IV and/or PART V apply, it is further mutually agreed that in the event of a conflict of conditions, the provisions of PART I and PART II shall prevail over those of PART III and/or PART IV and/or PART V to the extent of such conflict but no further.

| Signature (Owners)<br><br>FOR AND ON BEHALF OF<br>KOMETAS SHIPPING COMPANY | Signature (Charterers)<br><br>FOR AND ON BEHALF OF<br>VOYAGER OCEAN SERVICES LTD. |
|---|---|

## Rider to the Bareboat Charter Party of the mv "Donbass"

## dated 16.06.2004

### Clause 27

The vessel will be delivered upon completion of present voyage at the time of DOP at port of Bizerte, Tunisia with bunkers as on board. Bunkers on redelivery should be about the same quantity as on delivery, but always enough to reach safely nearest accessible bunkering place. Bunkers prices on delivery/redelivery are USD 195 pmt IFO180 CST and USD 380 pmt MGO. The Charterers on delivery and the Owners on redelivery will take over and pay for all bunkers remaining on board. The cost of consumable ship's stores such as lub oil, fresh water, paints, unbroken food provision having on board of the vessel in accordance with the master's inventory reports and invoices at the time of delivery/redelivery should be paid by the Charterers _.d the Owners respectively.

### Clause 28

Before delivery both the Owners and the Charterers will appoint a Surveyor for their account to effect a joint on-hire survey. Prior to redelivery Owners' and Charterers' Representatives carry out a joint off-hire survey. The on-hire survey will carried out in the Owners' time and expenses, the off-hire survey to be carried out in the Charterers' time and expenses. Cost for such Survey should not exceed USD 2,000.00

### Clause 29

Vessel entered with "American P & I Club".

### Clause 30 - Vessel's Description

See Appendix No 1.

### Clause 31

Hereby is mutually agreed between Charterers and Owners that each 6 months during all period of the hire the hire rate indicated in Box 21 could be revised, and can be changed in dependence of shipping industry market oscillations after the mutual approval by the contracting parties.

### Clause 32 - Additional to Arbitration Clause

If either of the appointed Arbitrators refuses to act, is incapable of acting or dies the party who appointed him, may appoint a new arbitrator in his place. If one Party fails to appoint an Arbitrator either originally or by way of substitution as aforesaid for 30 clear days after the other party having appointed his Arbitrator has served the party making default with notice or make the appointment, the Party who has appointed an Arbitrator may appoint the Arbitrator to act as sole Arbitrator in the reference and his award shall be binding on both Parties as if he had been appointed by consent. If the two Arbitrators fail to agree upon an umpire, the president of the Supreme Court is to nominate an Umpire.

## Clause 33

In the event that the vessel is delayed or detained by strikes, labour boycotts or any other discriminations or difficulties against the ship because of previous trade and/or registry and/or manning payment Hire shall cease and the time thereby lost and all expenses including bunker fuel consumed during such periods shall be for the Owners' account and may be deducted from hire. If the vessel is idle for 30 consecutive days or more the Charterers shall have the privilege of cancelling the balance of this Charter.

## Clause 34

Should the vessel be arrested at the suit of any person having or purporting to have a claim against the vessel or any interest in the vessel but excluding cargo hire under this Charter Party shall not be payable in respect of any such period whilst the vessel remains under arrest or remains unemployed at the result, of such an arrest and the owners shall reimburse to the Charterers any expenditure which they may incur under this Charter Party in respect of any period during which by virtue of this Clause no hire is payable.

## Clause 35 Trading Limits

Vessel shall be employed in lawful trades between safe ports and safe places within worldwide, excluding Israel, Ukraine, T.O.C, USA. Direct trading between China and Taiwan, South Korea and North Korea, Iraq and Iran, USA and Cuba and any War Zones declared by Underwriters. The Charterers to have the option to trade at such areas paying additional premium in accordance with the scale lay down by London Underwriters.

## Clause 36. The Owners warrant that on the date of delivery under this C/P the vessel is:

A) fitted with Australian hold ladders according to Australian rules and regulations – NO

B) steel floored throughout in all holds strengthened and suitable for grab discharge – YES

C) fully logs/timber fitted with all loose lashing material and chains - NO
    -and stanchions -NO

D) self trimming in all holds – NO

E) strengthened for carriage of heavy cargoes and suitable for alternate holds loading – YES

F) fitted for carriage of grain in accordance with SOLAS 1974 and later amendments without requiring bagging, strapping or securing when loading a full (deadweight) cargo of heavy grain in bulk (stowage factor 42 cub.ft/mt) with ends untrimmed – YES

G) equipped with sufficient hatch tents to cover all hatches - NO

H) electrically ventilated in all holds - YES
    number of air changers per hour basis empty holds – 6
    number of fans  - 20 and outlets each compartment – 4

I) fitted with shaft generator - NO

J) $CO_2$ fitted in all cargo compartments - YES

K) cargo battens fitted permanently –

L) fully fitted for PANAMA CANAL – YES

SUEZ CANAL     -YES ,  ST.LAWRENCE    -NO  ,  GREAT LAKES     -NO

### Clause 37 - Cargo Exclusions

The vessel shall be employed in carrying lawful merchandise excluding any goods of dangerous, injurious, flammable or corrosive nature unless carried in accordance with the requirements or recommendations of the competent Authorities of the country of the vessel's registry and of ports of shipment and discharge and of any intermediate countries or ports through whose waters the vessel must pass. Without prejudice to the generality of the foregoing, in addition the following are specially excluded: livestock of any description, arms, ammunition, explosives, nuclear and radioactive materials, acids pitch in bulk, asphalt in bulk, turnings, shavings and heavy oily parts, hides, cement in bulk.

### Clause 38 – Passing of Special Survey

Further to Cl.9 it is mutually agreed that Charterers shall pay coming vessel's Special Survey Repair in order to get 5 years validity ship's Certificate of Class. The Owners have a right of control and supervision for vessel's Special Survey passing during the time of repair.

### Clause 39 - Owner's Bank Details

COMETAS SHIPPING COMPANY, MARIUPOL, UKRAINE

| | |
|---|---|
| ACCOUNT NO. | : MPL-502096-USD-3004-01 |
| BENEFICIARY BANK | : FIRST UKRAINIAN INTERNATIONAL BANK DONETSK, UKRAINE (MARIUPOL BRANCH) |
| SWIFT | : FUIBUA2X |
| CORRESPONDENT BANK ACCOUNT | :BANKER'S TRUST COMPANY NEW YORK : 04-182-366 |
| NO.SWIFT | : BKTRUS33 |

### Clause 40

For the purposes of this Clause "Business day" means any day on which banks are open for the transaction of business in New York and any other relevant place of payment hereunder.

**PART II**

## 'BARECON 89" Standard Bareboat Charter

1. **Definitions**
   In this Charter, the following terms shall have the meanings hereby assigned to them:
   "The Owners" shall mean the person or company registered as Owners of the Vessel.
   "The Charterers" shall mean the Bareboat Charterers and shall not be construed to mean a time Charterers or a voyage Charterers.

2. **Delivery (not applicable to new/building vessels)**
   The Vessel shall be delivered and taken over by the Charterers at the port or place indicated in Box 13, ~~in such ready berth as the Charterers may direct.~~
   The Owners shall before and at the time of delivery exercise due diligence to make the Vessel seaworthy and in every respect ready in hull, machinery and equipment for service under this Charter. The Vessel shall be properly documented at time of delivery.
   The delivery to the Charterers of the Vessel and the taking over of the Vessel by the Charterers shall constitute a full performance by the Owners of all the Owners' obligations under Clause 2, and thereafter the Charterers shall not be entitled to make or assert any claim against the Owners on account of any conditions, representations or warranties expressed or implied with respect to the Vessel but the Owners shall be responsible for repairs or renewals occasioned by latent defects in the Vessel, her machinery or appurtenances, existing at the time of delivery under the Charter, provided such defects have manifested themselves within 18 months after delivery unless otherwise provided in Box 30.

3. **~~me~~ for Delivery (not applicable to new/building vessels)**
   ~~The~~ Vessel to be delivered not before the date indicated in Box 14 unless with the Charterers' consent.
   Unless otherwise agreed in Box 17, the Owners to give the Charterers not less than 30 running days' preliminary and not less than 14 days' definite notice of the date on which the Vessel is expected to be ready for delivery.
   The Owners to keep the Charterers closely advised of possible changes in the Vessel's position.

4. **Cancelling (not applicable to new/building vessels)**
   Should the Vessel not be delivered latest by the cancelling date indicated in Box 15, the Charterers to have the option of cancelling this Charter without prejudice to any claim the Charterers may otherwise have on the Owners under the Charter.
   If it appears that the Vessel will be delayed beyond the cancelling date, the Owners shall, as soon as they are in a position to state with reasonable certainty the day on which the Vessel should be ready, give notice thereof to the Charterers asking whether they will exercise their option of cancelling, and the option must then be declared within one hundred and sixty-eight (168) hours of the receipt by the Charterers of such notice. If the Charterers do not then exercise their option of cancelling, the seventh day after the readiness date stated in the Owners' notice shall be regarded as a new cancelling date for the purpose of this Clause.

5. **~~ading~~ Limits**
   ~~The~~ Vessel shall be employed in lawful trades for the carriage of suitable lawful merchandise within the trading limits indicated in Box 19.
   The Charterers undertake not to employ the Vessel or suffer the Vessel to be employed otherwise than in conformity with the terms of the instruments of insurance (including any warranties expressed or implied therein) without first obtaining the consent to such employment of the Insurers and complying with such requirements as to extra premium or otherwise as the Insurers may prescribe. If required, the Charterers shall keep the Owners and the Mortgagees advised of the intended employment of the Vessel.
   The Charterers also undertake not to employ the Vessel or suffer her employment in any trade or business which is forbidden by the law of any country to which the Vessel may sail or is otherwise illicit or in carrying illicit or prohibited goods or in any manner whatsoever which may render her liable to condemnation, destruction, seizure or confiscation.
   Notwithstanding any other provisions contained in this Charter it is agreed that nuclear fuels or radioactive products or waste are specifically excluded from the cargo permitted to be loaded or carried under this Charter. This exclusion does not apply to radio-isotopes used or intended to be used for any industrial, commercial, agricultural, medical or scientific purposes provided the Owners' prior approval has been obtained to loading thereof. See Cl.35

6. **Surveys (not applicable to new/building vessels) See Cl.28**
   ~~Survey on Delivery and Redelivery. - The Owners and Charterers shall each appoint surveyors for the purpose of determining and agreeing in writing the condition of the Vessel at the time of delivery and redelivery hereunder. The Owners shall bear all expenses of the On-Survey including loss of time, if any, and the Charterers shall bear all expenses of the Off-Survey including loss of~~

~~time, if any, at the rate of hire per day or pro rata, also including in each case the cost of any docking and undocking, if required, in connection herewith.~~

7. **Inspection**
   *Inspection.* - The Owners shall have the right at any time to inspect or survey the Vessel or instruct a duly authorized surveyor to carry out such survey on their behalf to ascertain the condition of the Vessel and satisfy themselves that the Vessel is being properly repaired and maintained. Inspection or survey in dry-dock shall be made only when the Vessel shall be in dry-dock for the Charterers' purpose. However, the Owners shall have the right to require the Vessel to be dry-docked for inspection if the Charterers are not docking her at normal classification intervals. The fees for such inspection or survey shall in the event of the Vessel being found to be in the condition provided in Clause 9 of this Charter be payable by the Owners and shall be paid by the Charterers only in the event of the Vessel being found to require repairs or maintenance in order to achieve the condition so provided. All time taken in respect of inspection, survey or repairs shall count as time on hire and shall form part of the Charter period.
   The Charterers shall also permit the Owners to inspect the Vessel's log books whenever requested and shall whenever required by the Owners furnish them with full information regarding any casualties or other accidents or damage to the Vessel. For the purpose of this Clause, the Charterers shall keep the Owners advised of the intended employment of the Vessel.

8. **Inventories and Consumable Oil and Stores**
   A complete inventory of the Vessel's entire equipment, outfit, appliances and of all consumable stores on board the Vessel shall be made by the Charterers in conjunction with the Owners on delivery and again on redelivery of the Vessel. The Charterers and the Owners, respectively, shall at the time of delivery and redelivery take over and pay for all bunkers, lubricating oil, water and unbroached provisions, paints, oils, ropes and other consumable stores in the said Vessel ~~at the then current market prices at the ports of delivery and redelivery, respectively.~~ See Cl.27

9. **Maintenance and Operation**

   (a) The Vessel shall during the Charter period be in the full possession and at the absolute disposal for all purposes of the Charterers and under their complete control in every respect. The Charterers shall maintain the Vessel, her machinery, boilers, appurtenances and spare parts in a good state of repair, in efficient operating condition and in accordance with good commercial maintenance practice and, except as provided for in Clause 13(l), they shall keep the Vessel with unexpired classification of the class indicated in Box 10 and with other required certificates in force at all times. The Charterers to take immediate steps to have the necessary repairs done within a reasonable time failing which the Owners shall have the right of withdrawing the Vessel from the service of the Charterers without noting any protest and without prejudice to any claim the Owners may otherwise have against the Charterers under the Charter. Also see Cl.38
   Unless otherwise agreed, in the event of any improvement, structural changes or expensive new equipment becoming necessary for the continued operation of the Vessel by reason of new class requirements or by compulsory legislation costing more than 5 per cent, of the Vessel's marine insurance value as stated in Box 27, then the extent, if any, to which the rate of hire shall be varied and the ratio in which the cost of compliance shall be shared between the parties concerned in order to achieve a reasonable distribution thereof as between the Owners and the Charterers having regard, inter alia, to the length of the period remaining under the Charter, shall in the absence of agreement, be referred to arbitration according to Clause 26. The Charterers are required to establish and maintain financial security or responsibility in respect of oil or other pollution damage as required by any government, including Federal, state or municipal or other division or authority thereof, to enable the Vessel, without penalty or charge, lawfully to enter, remain at, or leave any port, place, territorial or contiguous waters of any country, state or municipality in performance of this Charter without any delay. This obligation shall apply whether or not such requirements have been lawfully imposed by such government or division or authority thereof. The Charterers shall make and maintain all arrangements by bond or otherwise as may be necessary to satisfy such requirements at the Charterers' sole expense and the Charterers shall indemnify the Owners against all consequences whatsoever (including loss of time) for any failure or inability to do so.
   ~~TOVALOP SCHEME. (Applicable to oil tank vessels only) - The Charterers are required to enter the Vessel under the TOVALOP SCHEME or under any similar compulsory scheme upon delivery under this Charter and to maintain her so during the currency of this Charter.~~
   (b) The Charterers shall at their own expense and by their own procurement man, victual, navigate, operate, supply, fuel and repair the Vessel whenever required during the Charter period and they shall pay all charges and expenses

| | Line |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| | 4 |
| | 5 |
| | 6 |
| | 7 |
| | 8 |
| | 9 |
| | 10 |
| | 11 |
| | 12 |
| | 13 |
| | 14 |
| | 15 |
| | 16 |
| | 17 |
| | 18 |
| | 19 |
| | 20 |
| | 21 |
| | 22 |
| | 23 |
| | 24 |
| | 25 |
| | 26 |
| | 27 |
| | 28 |
| | 29 |
| | 30 |
| | 31 |
| | 32 |
| | 33 |
| | 34 |
| | 35 |
| | 36 |
| | 37 |
| | 38 |
| | 39 |
| | 40 |
| | 41 |
| | 42 |
| | 43 |
| | 44 |
| | 45 |
| | 46 |
| | 47 |
| | 48 |
| | 49 |
| | 50 |
| | 51 |
| | 52 |
| | 53 |
| | 54 |
| | 55 |
| | 56 |
| | 57 |
| | 58 |
| | 59 |
| | 60 |
| | 61 |
| | 62 |
| | 63 |
| | 64 |
| | 65 |
| | 66 |
| | 67 |
| | 68 |
| | 69 |
| | 70 |
| | 71 |
| | 72 |
| | 73 |
| | 74 |
| | 75 |
| | 76 |
| | 77 |
| | 78 |
| | 79 |
| | 80 |
| | 81 |
| | 82 |
| | 83 |
| | 84 |
| | 85 |
| | 86 |
| | 87 |
| | 88 |
| | 89 |
| | 90 |
| | 91 |
| | 92 |
| | 93 |
| | 94 |
| | 95 |
| | 96 |
| | 97 |
| | 98 |
| | 99 |
| | 100 |
| | 101 |
| | 102 |
| | 103 |
| | 104 |
| | 105 |
| | 106 |
| | 107 |
| | 108 |
| | 109 |
| | 110 |
| | 111 |
| | 112 |
| | 113 |
| | 114 |
| | 115 |
| | 116 |
| | 117 |
| | 118 |
| | 119 |
| | 120 |
| | 121 |
| | 122 |
| | 123 |
| | 124 |
| | 125 |
| | 126 |
| | 127 |
| | 128 |
| | 129 |
| | 130 |
| | 131 |
| | 132 |
| | 133 |
| | 134 |
| | 135 |
| | 136 |
| | 137 |
| | 138 |
| | 139 |
| | 140 |
| | 141 |
| | 142 |
| | 143 |
| | 144 |
| | 145 |
| | 146 |
| | 147 |

**PART II**

## 'BARECON 89" Standard Bareboat Charter

of every kind and nature whatsoever incidental to their use and operation of the Vessel under this Charter, including any foreign general municipality and/or state taxes. The Master, officers and crew of the Vessel shall be the servants of the Charterers for all purposes whatsoever, even if for any reason appointed by the Owners.

Charterers shall comply with the regulations regarding officers and crew in force in the country of the Vessel's flag or any other applicable law.

(c) During the currency of this Charter, the Vessel shall retain her present name as indicated in Box 5 and shall remain under and fly the flag as indicated in Box 5. Provided, however, that the Charterers shall have the liberty to paint the Vessel in their own colours, install and display their funnel insignia and fly their own house flag. Painting and re-painting, installment and re-installment to be for the Charterers' account and time used thereby to count as time on hire.

(d) The Charterers shall make no structural changes in the Vessel or changes in the machinery, boilers, appurtenances or spare parts thereof without in each instance first securing the Owners' approval thereof. If the Owners so agree, the Charterers shall, if the Owners so require, restore the Vessel to its former condition before the termination of the Charter.

(e)The Charterers shall have the use of all outfit, equipment, and appliances on board the Vessel at the time of delivery, provided the same or their substantial equivalent shall be returned to the Owners on redelivery in the same good order and condition as when received, ordinary wear and tear excepted. The Charterers shall from time to time during the Charter period replace such items of equipment as shall be so damaged or worn as to be unfit for use. The Charterers are to procure that all repairs to or replacement of any damaged, worn or lost parts or equipment be effected in such manner th as regards workmanship and quality of materials) as not to diminish the value of the Vessel. The Charterers have the right to fit additional equipment at their expense and risk but the Charterers shall remove such equipment at the end of the period if requested by the Owners.

Any equipment including radio equipment on hire on the Vessel at time of delivery shall be kept and maintained by the Charterers and the Charterers shall assume the obligations and liabilities of the Owners under any lease contracts in connection therewith and shall reimburse the Owners for all expenses incurred in connection therewith, also for any new equipment required in order to comply with radio regulations.

(f)The Charterers shall dry-dock the Vessel and clean and paint her underwater parts whenever the same may be necessary, but not less than once in every eighteen calendar months after delivery unless otherwise agreed in Box 18.

### 10.Hire

(a) The Charterers shall pay to the Owners for the hire of the Vessel at the lump sum per calendar month as indicated in Box 21 commencing on and from the date and hour of her delivery to the Charterers and at after the agreed lump sum for any part of a month. Hire to continue until the date and hour when the Vessel is redelivered by the Charterers to her Owners.

(b)Payment of Hire, except for the first and last month's Hire, if sub-clause (c) of this Clause is applicable, shall be made in cash without discount every month in advance on the first day of each month in the currency and in the manner indicated in Box 23 and at the place mentioned in Box 24. See Cl.39

(c) Payment of Hire for the first and last month's Hire if less than a full month shall be calculated proportionally according to the number of days in the particular calendar month and advance payment to be effected accordingly.

(d) Should the Vessel be lost or missing. Hire to cease from the date and time when she was lost or last heard of. Any Hire paid in advance to be adjusted accordingly.

(e) Time shall be of the essence in relation to payment of Hire hereunder. In default of payment beyond a period of seven running days, the Owners shall have the right to withdraw the Vessel from the service of the Charterers without noting any protest and without interference by any court or any other formality whatsoever, and shall, without prejudice to any other claim the Owners may otherwise have against the Charterer under the Charter, be entitled to damages in respect of all costs and losses incurred as a result of the Charterers' default and the ensuing withdrawal of the Vessel.

(f) Any delay in payment of Hire shall entitle the Owners to an interest at the rate per annum as agreed in Box 22. If Box 22 has not been filled in the current market rate in the country where the Owners have their Principal Place of Business shall apply.

### 11. Mortgage

(a) Owners warrant that they have not effected any mortgage of the Vessel.

(b) The Vessel chartered under this Charter is financed by a mortgage according to the Deed(s) of Covenant annexed to this Charter and as stated in Box 26. By their counter signature on the Deed(s) of Covenant, the Charterers undertake to have acquainted themselves with all terms, conditions and provisions of the said Deed(s) of Covenant. The Charterers undertake that they will comply with all such instructions or directions in regard to the employment,

148
149
150
151
152
153
154
155
156
157
158
159
160
161
162
163
164
165
166
167
168
169
170
171
172
173
174
175
176
177
178
179
180
181
182
183
184
185
186
187
188
189
190
191
192
193
194
195
196
197
198
199
200
201
202
203
204
205
206
207
208
209
210
211
212
213
214
215
216
217
218
219
220
221
222
223

insurances, repairs and maintenance of the Vessel, etc., as laid down in the Deed(s) of Covenant or as may be directed from time to time during the currency of the Charter by the Mortgagee(s) in conformity with the Deed(s) of Covenant.

(c) The Owners warrant that they have not effected any mortgage(s) other than stated in Box 26 and that they will not effect any other mortgage(s) without the prior consent of the Charterers.

(Optional: Clauses 11(a) and 11(b) are alternatives; indicate alternative agreed in Box 26)

### 12.Insurance and Repairs

(a) During the Charter period the Vessel shall be kept insured by the Charterers at their expense against marine, war and Protection and Indemnity risks in such form as the Owners shall in writing approve, which approval shall not be unreasonably withheld. Such marine war and P. and I. insurances shall be arranged by the Charterers to protect the interests of both the Owners and the Charterers and mortgagees (if any), and the Charterers shall be at liberty to protect under such insurances the interests of any managers they may appoint. All insurance policies shall be in the joint names of the Owners and the Charterers as their interests may appear.

If the Charterers fail to arrange and keep any of the insurances provided for under the provisions of sub-clause (a) above in the manner described therein, the Owners shall notify the Charterers whereupon the Charterers shall rectify the position within seven running days, failing which Owners shall have the right to withdraw the Vessel from the service of the Charterers without prejudice to any claim the Owners may otherwise have against the Charterers.

The Charterers shall, subject to the approval of the Owners and the Underwriters, effect all insured repairs and shall undertake settlement of all costs in connection with such repairs as well as insured charges, expenses and liabilities (reimbursement to be secured by the Charterers from the Underwriters) to the extent of coverage under the insurances herein provided for.

The Charterers also to remain responsible for and to effect repairs and settlement of costs and expenses incurred thereby in respect of all other repairs not covered by the insurances and/or not exceeding any possible franchise(s) or deductibles provided for in the insurances.

All time used for repairs under the provisions of sub-clause (a) of this Clause and for repairs of latent defects according to Clause 2 above including any deviation shall count as time on hire and shall form part of the Charter period.

(b) If the conditions of the above insurances permit additional insurance to be placed by the parties, such cover shall be limited to the amount for each party set out in Box 28 and Box 29, respectively. The Owners or the Charterers as the case may be shall immediately furnish the other party with particulars of any additional insurance effected, including copies of any cover notes or policies and the written consent of the insurers of any such required insurance in any case where the consent of such insurers is necessary.

(c) Should the Vessel become an actual, constructive, compromised or agreed total loss under the insurances required under sub-clause (a) of Clause 12, all insurance payments for such loss shall be paid to the Mortgagee, if any, in the manner described in the Deed(s) of Covenant, who shall distribute the moneys between themselves, the Owners and the Charterers according to their respective interests. The Charterers undertake to notify the Owners and the Mortgagee, if any, of any occurrences in consequence of which the Vessel is likely to become a Total Loss as defined in this Clause.

(d) If the Vessel becomes an actual, constructive, compromised or agreed total loss under the insurances arranged by the Charterers in accordance with sub-clause (a) of this Clause, this Charter shall terminate as of the date of such loss.

(e) The Owners shall upon the request of the Charterers, promptly execute such documents as may be required to enable the Charterers to abandon the Vessel to insurers and claim a constructive total loss.

(f) For the purpose of insurance coverage against marine and war risks under the provisions of sub-clause (a) of this Clause, the value of the Vessel is the sum indicated in Box 27.

### 13.Insurance, Repairs and Classification

(Optional, only to apply if expressly agreed and stated in Box 27, in which event Clause 12 shall be considered deleted).

(a) During the Charter period the Vessel shall be kept insured by the Owners at their expense against marine and war risks under the form of policy or policies attached hereto. The Owners and/or insurers shall not have any right of recovery or subrogation against the Charterers on account of loss of or any damage to the Vessel or her machinery or appurtenances covered by such insurance, or on account of payments made to discharge claims against or liabilities of the Vessel or the Owners covered by such insurance. All insurance policies shall be in the joint names of the Owners and the Charterers as their interests may appear.

224
225
226
227
228
229
230
231
232
233
234
235
236
237
238
239
240
241
242
243
244
245
246
247
248
249
250
251
252
253
254
255
256
257
258
259
260
261
262
263
264
265
266
267
268
269
270
271
272
273
274
275
276
277
278
279
280
281
282
283
284
285
286
287
288



## PART II

## 'BARECON 89' Standard Bareboat Charter

(b)During the Charter period the Vessel shall be kept insured by the Charterers 299
at their expense against Protection and Indemnity risks in such form as the 300
Owners shall in writing approve which approval shall not be unreasonably 301
withheld. If the Charterers fail to arrange and keep any of the insurance 302
provided for under the provisions of sub-clause (b) in the manner described 303
therein, the Owners shall notify the Charterers whereupon the Charterers shall 304
rectify the position within seven running days, failing which the Owners shall 305
have the right to withdraw the Vessel from the service of the Charterers without 306
prejudice to any claim the Owners may otherwise have against the Charterers. 307
(c)In the event that any act or negligence of the Charterers shall vitiate any of 308
the insurance herein provided, the Charterers shall pay to the Owners all 309
losses and indemnify the Owners against all claims and demands which would 310
otherwise have been covered by such insurance. 311
(d)The Charterers shall, subject to the approval of the Owners or Owners' 312
Underwriters, effect all insured repairs, and the Charterers shall undertake 313
settlement of all miscellaneous expenses in connection with such repairs as 314
well as all insured charges, expenses and liabilities, to the extent of coverage 315
under the insurances provided for under the provisions of sub-clause (a) of this 316
Clause. The Charterers to be secured reimbursement through the Owners' 317
Underwriters for such expenditures upon presentation of accounts. 318
(e)The Charterers to remain responsible for and to effect repairs and 319
settlement of costs and expenses incurred thereby in respect of all other 320
repairs not covered by the insurances and/or not exceeding any possible 321
franchise(s) or deductibles provided for in the insurances. 322
(f) `Time used for repairs under the provisions of sub-clause (d) and (e) of this 323
C ... e and for repairs of latent defects according to Clause 2 above, including 324
any deviation, shall count as time on-hire and shall form part of the Charter 325
period. 326
The Owners shall not be responsible for any expense as are incident to the 327
use and operation of the Vessel for such time as may be required to make 328
such repairs. 329
(g)If the conditions of the above insurances permit additional insurance to be 330
placed by the parties such cover shall be limited to the amount for each party 331
set out in Box 28 and Box 29, respectively. The Owners or the Charterers as 332
the case may be shall immediately furnish the other party with particulars of 333
any additional insurance effected, including copies of any cover notes or 334
policies and the written consent of the Insurers of any such required insurance 335
in any case where the consent of such insurers is necessary. 336
(h) Should the Vessel become an actual, constructive, compromised or 337
agreed total loss under the insurances required under sub-clause (a) of this 338
Clause, all insurance payments for such loss shall be paid to the Owners, who 339
shall distribute the moneys between themselves and the Charterers according 340
to their respective interests. 341
(i) In the Vessel becomes an actual, constructive, compromised or agreed total 342
loss under the insurances arranged by the Owners in accordance with sub 343
clause (a) of this Clause, this Charter shall terminate as of the date of such 344
loss. 345
(j) The Charterers shall upon the request of the Owners, promptly execute such 346
documents as may be required to enable the Owners to abandon the Vessel to 347
r ... ers and claim a constructive total loss. 348
(k) For the purpose of insurance coverage against marine and war risks under 349
the provisions of sub-clause (a) of this Clause, the value of the Vessel is the 350
sum indicated in Box 27. 351
(l) Notwithstanding anything contained in Clause 9 (a), It is agreed that under 352
the provisions of Clause 13, if applicable, the Owners shall keep the Vessel 353
with unexpired classification in force at all times during the Charter period. 354

### 14. Redelivery
(f) The Charterers shall at the expiration of the Charter period redeliver the Vessel 355
at a safe and ice-free port or place as indicated in Box 16. The Charterers shall 356
give the Owners not less than 30 running days' preliminary and not less than 14 357
days' definite notice of expected date, range of ports of redelivery or port or 358
place of redelivery. Any changes thereafter in Vessel's position hall be notified 359
immediately to the Owners. 360
Should the Vessel be ordered on a voyage by which the Charter period may 361
be exceeded the Charterers to have the use of the Vessel to enable them to 362
complete the voyage, provided it could be reasonably calculated that the 363
voyage would allow redelivery about the time fixed for the termination of the 364
Charter. 365
The Vessel shall be redelivered to the Owners in the same or as good 366
structure, state, condition and class as that in which she was delivered, fair 367
wear and tear not affecting class excepted. 368
The Vessel upon redelivery shall have her survey cycles up to date and class 369
certificates valid for at least the number of months agreed in Box 12. 370

### 15. Non-Lien and Indemnity
371
372

The Charterers will not suffer, nor permit to be continued, any lien or 373
encumbrance incurred by them or their agents, which might have priority over 374
the title and interest of the Owners in the Vessel. 375
The Charterers further agree to fasten to the Vessel in a conspicuous place 376
and to keep so fastened during the Charter period a notice reading as follows:- 377
"This Vessel is the property of (name of Owners). It is under charter to (name 378
of Charterers) and by the terms of the Charter Party neither the Charterers nor 379
the Master have any right, power or authority to create, incur or permit to be 380
imposed on the Vessel any lien whatsoever." 381
The Charterers shall indemnify and hold the Owners harmless against any lien 382
of whatsoever nature arising upon the Vessel during the Charter period while 383
she is under the control of the Charterers, and against any claims against the 384
Owners arising out of or in relation to the operation of the Vessel by the 385
Charterers. Should the Vessel be arrested by reason of claims or liens arising 386
out of her operation hereunder by the Charterers, the Charterers shall at their 387
own expense take all reasonable steps to secure that within a reasonable time 388
the Vessel is released and at their own expense put up bail to secure release 389
of the Vessel. 390

### 16. Lien
391
The Owners to have a lien upon all cargoes and sub-freights belonging to the 392
Charterers and any Bill of Lading freight for all claims under this Charter, and 393
the Charterers to have a lien on the Vessel for all moneys paid in advance and 394
not earned. 395

### 17. Salvage
396
All salvage and towage performed by the Vessel shall be for the Charterers' 397
benefit and the cost of repairing damage occasioned thereby shall be borne 398
by the Charterers. 399

### 18. Wreck Removal
400
In the event of the Vessel becoming a wreck or obstruction to navigation the 401
Charterers shall indemnify the Owners against any sums whatsoever which 402
the Owners shall become liable to pay and shall pay in consequence of the 403
Vessel becoming a wreck or obstruction to navigation. 404

### 19. General Average
405
General Average, if any, shall be adjusted according to the York-Antwerp Rules 406
1974 or any subsequent modification thereof current at the time of the casualty. 407
The Charter Hire not to contribute to General Average. 408

### 20. Assignment and Sub-Demise
409
The Charterers shall not assign this Charter nor sub-demise the Vessel except 410
with the prior consent in writing of the Owners which shall not be unreasonably 411
withheld and subject to such terms and conditions as the Owners shall 412
approve. 413

### 21. Bills of Lading
414
The Charterers are to procure that all Bills of Lading issued for carriage of 415
goods under this Charter shall contain a Paramount Clause incorporating any 416
legislation relating to Carrier's liability for cargo compulsorily applicable in the 417
trade; if no such legislation exists, the Bills of Lading shall incorporate the 418
British Carriage of Goods by Sea Act. The Bills of Lading shall also contain the 419
amended New Jason Clause and the Both-to-Blame Collision Clause. 420
The Charterers agree to indemnify the Owners against all consequences or 421
liabilities arising from the Master, officers or agents signing Bills of Lading or 422
other documents. 423

### 22. Bank Guarantee
424
The Charterers undertake to furnish, before delivery of the Vessel, a first class 425
bank guarantee or bond in the sum and at the place as indicated in Box 25 as 426
guarantee for full performance of their obligations under this Charter. 427
(Optional, only to apply if Box 25 filled in). 428

### 23. Requisition/Acquisition
430
(a) In the event of the Requisition for Hire of the Vessel by any governmental or 431
other competent authority (hereinafter referred to as "Requisition for Hire") 432
irrespective of the date during the Charter period when "Requisition for Hire" 433
may occur and irrespective of the length thereof and whether or not it be for an 434
indefinite or a limited period of time, and irrespective of whether it may or will 435
remain in force for the remainder of the Charter period, this Charter shall not be 436
deemed thereby or thereupon to be frustrated or otherwise terminated and the 437
Charterers shall continue to pay the stipulated hire in the manner provided by 438
this Charter until the time when the Charter would have terminated pursuant 439
to any of the provisions hereof always provided however that in the event of 440
"Requisition for Hire" any Requisition Hire or compensation received or 441

PART II
## "BARECON 89" Standard Bareboat Charter

receivable by the Owners shall be payable to the Charterers during the | 442
remainder of the Charter period or the period of the "Requisition for Hire" | 443
whichever be the shorter. | 444
The Hire under this Charter shall be payable to the Owners from the same time | 445
as the Requisition Hire is payable to the Charterers. | 446
(b) In the event of the Owners being deprived of their ownership in the Vessel | 447
by any Compulsory Acquisition of the Vessel or requisition for title by any | 448
governmental or other competent authority (hereinafter referred to as | 449
"Compulsory Acquisition") then, irrespective of the date on which the Charter | 450
period when "Compulsory Acquisition" may occur, this Charter shall be deemed | 451
terminated as of the date of such "Compulsory Acquisition". In such event | 452
Charter Hire to be considered as earned and to be paid up to the date and time | 453
and time of such "Compulsory Acquisition". | 454

24. War | 455
(a) The Vessel unless the consent of the Owners be first obtained not to be | 456
ordered nor continue to any place or on any voyage nor be used on any service | 457
which will bring her within a zone which is dangerous as the result of any actual | 458
or threatened act of war, war, hostilities, warlike operations, acts of piracy or of | 459
hostility or malicious damage against this or any other vessel or its cargo by | 460
any person, body or State whatsoever, revolution, civil war, civil commotion or | 461
the operation of international law, nor be exposed in any way to any risks or | 462
penalties whatsoever consequent upon the imposition of Sanctions, nor carry | 463
any goods that may in any way expose her to any risks of seizure, capture, | 464
penalties or any other interference of any kind whatsoever by the belligerent or | 465
fighting powers or parties or by any Government or Ruler. | 466
(b) The Vessel to have liberty to comply with any orders or directions as to | 467
departure, arrival, routes, ports of call, stoppages, destination, delivery or in | 468
any other wise whatsoever given by the Government of the nation under whose | 469
flag the Vessel sails or any other Government or any person (or body) acting or | 470
purporting to act with the authority of such Government or by any committee or | 471
person having under the terms of the war risks insurance on the Vessel the | 472
right to give any such orders or directions. | 473
(c) In the event of outbreak of war (whether there be a declaration of war or | 474
not) between any two or more of the countries as stated in Box 31, both the | 475
Owners and the Charterers shall have the right to cancel this Charter, | 476
whereupon the Charterers shall redeliver the Vessel to the Owners in | 477
accordance with Clause 14, if she has cargo on board after discharge thereof | 478
at destination, or if debarred under this Clause from reaching or entering it at a | 479
near open and safe port as directed by the Owners, or if she has no cargo on | 480
board, at the port at which she then is or if at sea at a near open and safe port | 481
as directed by the Owners. In all cases hire shall continue to be paid in | 482
accordance by the Owners. In all cases hire shall continue to be paid in | 483
Charter shall apply until redelivery. | 484

25. Commission | 486
The Owners to pay a commission at the rate indicated in Box 32 to the Brokers | 487
named in Box 32 on any Hire paid under the Charter but in no case less than is | 488
necessary to cover the actual expenses of the Brokers and a reasonable fee | 489
for their work. If the full Hire is not paid owing to breach of Charter by either of | 490
the parties the party liable therefor to indemnify the Brokers against their loss | 491
of commission. | 492
Should the parties agree to cancel the Charter, the Owners to indemnify the | 493
Brokers against any loss of commission but in such case the commission not | 494
to exceed the brokerage on one years Hire. | 495

26. Law and Arbitration | 496
*) 26.1. This Charter shall be governed by English law and any dispute arising out | 497
of this Charter shall be referred to arbitration in London, one arbitrator being | 498
appointed by each party, in accordance with the Arbitration Acts 1950 and 1979 | 499
or any statutory modification or re-enactment thereof for the time being in force. | 500
On the receipt by one party of the nomination in writing of the other party's | 501
arbitrator, that party shall appoint their arbitrator within fourteen days, failing | 502
which the decision of the single Arbitrator appointed shall apply. If two | 503
Arbitrators properly appointed shall not agree they shall appoint an umpire | 504
whose decision shall be final. | 505
*) 26.2. Should any dispute arise out of this Charter, the matter in dispute shall be | 506
referred to three persons at New York, one to be appointed by each of the | 507
parties hereto, and the third by the two so chosen; their decision or that of any | 508
two of them shall be final, and for purpose of enforcing any award, this | 509
agreement may be made a rule of the Court. | 510
The arbitrators shall be members of the Society of Maritime Arbitrators, Inc. of | 511
New York and the proceedings shall be conducted in accordance with the | 512
rules of the Society. | 513
*) 26.3. Any dispute arising out of this Charter shall be referred to arbitration at the | 514
place indicated in Box 33, subject to the law and procedures applicable there. | 515
26.4. If Box 33 in Part I is not filled in, sub-clause 26.1. of this Clause shall | 516
apply. | 517

*) 26.1, 26.2, and 26.3. are alternatives; indicate alternative agreed in Box 33.   518

APPENDIX NO.1

## TO THE MV "DONBASS" BAREBOAT CHARTER PARTY  DATED 16.06.2004

# Description of the mv " DONBASS "

### *EX 'MANLEY HAVANT'/'SATURN'/'LAS COLORADAS'/'ALVERO PEREZ'*

| | | |
|---|---|---|
| TYPE | : | GENERAL DRY CARGO |
| CLASS | : | LLOYD'S REGISTER OF SHIPPING |
| | | +100A1 STRENGTHED FOR HEAVY CARGOES+LMC(UMS) |
| OFFICIAL REGISTER NO. | : | 125 |
| LLOYD'S REGISTER NO. | : | 7602352 |
| YARD AND YEAR BUILT | : | EMPRESA NACIONAL BAZAN DE |
| | | CONSTRUCCIONES NAVALES MILITARES, S.A. EL |
| | | FERROL, SPAIN. 10/1979. |
| FLAG, HOMEPORT | : | UKRAIN, MARIUPOL |
| GRT/NRT  INTERNATIONAL | : | 9242/6184 |
| PANAMA | : | 10191/8374, 4 |
| SUEZ CANAL | : | 9777/8171 |
| LIGHT SHIP | : | 4326 MTS |
| CALL SIGN, TELEX NO. | : | URND, TLX 427295510 |
| LOA, LBP, BEAM | : | 149, 32  M, 141,17 M, 19,2 M |
| DEPTH MOULDED | : | 12.4 M |
| SUMMER DISPL/DWT/DRAFT | : | 19206 / 14880 / 8,969 M |
| FULL SPEED AND CONSUMPTION | : | ABT 11 KNOTS ON ABT 12 MTS IFO PLUS ABT 1,8 MTS  MGO |
| BUNKER CONSUMPTION IN | | |
| PORT PER 24 HOURS | : | WITH WORK CRANES - 2,8 MT MGO, WITHOUT- 1,8 MT MGO |
| LUB OIL CONSUMPTION AT SEA | | ABT 210 kg |
| LUB OIL CONSUMPTION AT PORT | | ABT 10 kg |
| BUNKER FUEL CAPACITIES | : | FUEL OIL 670,0 MTS  (726,5 CUB.M.,) |
| | | GAS OIL 220 MTS   (270.7 CUB.M.) |

BREAKDOWN OF IFO CAPACITY

| TANK | 80 % | 100 % |
|---|---|---|
| # 2 PS | 116. 8 CUB.M. | 146.6 CUB.M. |
| # 2 SS | 116.8 CUB.M. | 146.6 CUB.M. |
| # 3 PS | 82.8 CUB.M. | 103.5 CUB.M. |
| # 3 SS | 82.8 CUB.M. | 103.5 CUB.M. |
| # 4 PS | 120.7 CUB.M. | 150.0 CUB.M. |
| # 4 SS | 120.7 CUB.M | 150.0 CUB.M. |
| SETTLING TANK | 56.4 CUB.M. | |
| SERVICE TANK | 29.5 CUB.M. | |
| TTL | 726.5 CUB.M. | 886.1 CUB.M. |

BREAKDOWN OF MGO CAPACITY

| TANK | 80% | 100% |
|---|---|---|
| #11 | 162.8 CUB.M. | 203.5 CUB.M. |
| SERVICE ME | 65.1 CUB.M. | |
| SERVICE DE | 21.4 CUB.M. | |
| SETTLING TANK | 21.4 CUB.M. | |
| TTL | 270.7  CUB.M. | 311.4 CUB.M. |

| | | |
|---|---|---|
| WATER BALLAST TANK CAPACITY | : | 1651 CUB.M |
| WATER BALLAST  HOLD(S) CAPACITY | : | HOLD N3 - 2472 CUB.M |
| BALLASTING CAPACITY | : | 250/100 |
| DEBALLASTING CAPACITY | : | 250/100 |

1

DWAT IN METRIC TONS
| | | |
|---|---|---|
| TROPICAL | : | 15249 MT |
| SUMMER | : | 14 880 MT |
| WINTER | : | 14 366 MT |
| FW ALLOW. ON SUMMMER MARKS | : | 202 MM |
| TPC | : | 23.75 MT |

| NUMBER AND SIZE OF HATCHES | : | | MAIN DECK | SECOND DECK |
|---|---|---|---|---|
| | | N1 | 12290 x 7870 | 13340 x 8670 |
| | | N2 | 18450 x 11020 | 23040 x 12450 |
| | | N3 | 12290 x 11020 | 14570 x 12450 |
| | | N4 | 18450 x 11020 | 23040 x 12450 |
| | | N5 | 12290 x 11020 | 16110 x 12450 |

TYPE OF HATCH COVERS                : Mc GREGOR ROLLER

**BELOW STATED CUBIC CAPACITIES ARE ALL CLEAR AND AVAILABLE FOR CARGO INCLUDING HATCHCOAMING SPACE :**

| | % | GRAIN CUB M / CUB F | BALE CUB M / CUB F | CNTRS 20' HOLD / HATCH COVER |
|---|---|---|---|---|
| HOLD N1 | 12 | 1804,6 / 63734 | 1535,7 / 54225 | 30 / 6 |
| HOLD N2 | 25 | 3856,4 / 136193 | 3366,3 / 118864 | 68 / 12 |
| HOLD N3 | 18 | 2809,0 / 99203 | 2422,5 / 85538 | 48 / 8 |
| HOLD N4 | 27 | 4095,5 / 144637 | 3609.8 / 127462 | 72 / 12 |
| HOLD N5 | 18 | 2666,4 / 94167 | 2363.4 / 83451 | 40 / 8 |
| | | | | ALL ALONG DECK - 32 |
| HOLDS TTL | | 15231,9 / 537931 | 13297,7 / 469541 | TTL - 336 |
| | | | | |
| TWEENDECK N1 | | 927,2 / 32744 | 821,7 / 29019 | |
| TWEENDECK N2 | | 1830,2 / 64633 | 1604,7 / 56672 | |
| TWEENDECK N3 | | 1294,9 / 45729 | 1131,3 / 39953 | |
| TWEENDECK N4 | | 1896,9 / 66988 | 1665,8 / 58829 | |
| TWEENDECK N5 | | 1325,1 / 46795 | 1158,5 / 40913 | |
| | | | | |
| TWEENDECKS TTL | | 7274,3 / 256889 | 6382,0 / 225386 | |
| TTL CAPACITY OF HOLDS AND TWEENDECKS | : | 22506,2 / 794820 | 19679,7 / 694890 | |

| | | |
|---|---|---|
| CONSTANTS MAX | : | 200 MT |
| FRESHWATER CAPACITY | : | 335 MT |
| FRESHWATER CONSUMPTION | : | 5  MT |
| MAXIMUM UNIFORM LOAD ON TANKTOP | : | 15,0 MT/SQ M |
| WEATHER DECK | : | 1,22 MT/SQ M |
| WEATHER DECK HATCHCOVER | : | 1,17 MT/SQ M |
| TWEEN DECK AND COVERS | : | 2,23 MT/SQ M |

CARGO GEAR (NUMBER,CAPACITY,MAX. OUTSWING, STATE WHERE SITUATED):
2-ELECTROHYDRAULIC CRANES, 10 MT SWL(MAX/ MIN RAD 22M /4M) BETWEEN HOLDS NOS 1/2 AND 2/3.
2-ELECTROHYDRAULIC CRANES, 16 MT SWL(MAX/ MIN RAD 22M /4M) BETWEEN HOLDS NOS 3/4 AND 4/5.
2-BOOMS. 2 MT SWL EACH FOR PROVISIONS HANDLING P/S SUPERSTRUCTURE

AFT DISTANCE FROM WATERLINE TO TOP OF HATCHCOAMING FORE AT FORWARD HATCH AND AFT AT AFT HATCH BASIS 30% FILLING OF BUNKER CAPACITIES, WHEN FULLY BALLASTED ( WB TANKS ONLY):

| | | | | | |
|---|---|---|---|---|---|
| FORE HATCH | : | 11,8  M | AFT HATCH | : | 9,80 M |
| DRAFT FORE | : | 2,04 M | AFT | : | 4,75 M |

MAX AIRDRAFT                                    :        35, 1 M

NUMBER AND SIZE OF HOLDS (CLEAR LENGTH X BREADTH X HEIGHT):

| NO: | LENGTH | (BF) | (BA) | HEIGHT |
|-----|--------|------|------|--------|

HOLDS:

| NO: | LENGTH | (BF) | (BA) | HEIGHT |
|-----|--------|------|------|--------|
| N1 | 17,0 | 6,4 | 14,6 | 7,50 |
| N2 | 26,3 | 14,6 | 18,9 | 7,50 |
| N3 | 18,5 | 18,9 | 18,9 | 7,50 |
| N4 | 27,2 | 18,9 | 18,9 | 7,50 |
| N5 | 17,1 | 18,9 | 12,5 | 7,50 |

TWEENDECKS:

| NO: | LENGTH | (BF) | (BA) | HEIGHT |
|-----|--------|------|------|--------|
| N1 | 17,0 | 9,6 | 17,8 | 2,70 |
| N2 | 26,3 | 17,8 | 19,0 | 2,70 |
| N3 | 18,5 | 19,0 | 19,0 | 2,70 |
| N4 | 27,2 | 19,0 | 19,0 | 2,70 |
| N5 | 17,1 | 19,0 | 18,0 | 2,70 |

MAIN ENGINE MAKE AND TYPE      :    BAZAN M.A.N. 12V40/54 A
DESIGNED MCR BHP                        : 7500
DESIGNED NCR BHP                        : 6000
H+M VALUE - 1700000 USD

VESSEL
A)FITTED WITH AUSTRALIAN HOLD LADDERS ACCORDING TO AUSTRALIAN ULES AND REGULATIONS - NO
B)STEELFLOORED THROUGHOUT IN ALL HOLDS STERNGTHENED AND SUITABLE FOR GRAB DISCHARGE YES
C)FULLY LOGS/TIMBER FITTED WITH ALL LOOSE LASHING MATERIAL AND
   CHAINS - NO - AND STANCHIONS - NO
D)SELFTRIMMING IN ALL HOLDS - NO
E)STRENGHTENED FOR CARRIAGE OF HEAVY CARGOES AND SUITABLE FOR
   ALTERNATE HOLDS LOADING - YES
F)FITTED FOR CARRIAGE OF GRAIN IN ACCORDANCE WITH SOLAS 1974 AND LATER AMENDMENTS WITHOUT
REQUIRING BAGGING,STRAPPING OR SECURING WHEN LOADING A FULL (DEADWEIGHT) CARGO OF HEAVY
GRAIN IN BULK (STOWAGE FACTOR 42 CBFT/MT) WITH ENDS UNTRIMMED - YES
G)EQUIPPED WITH SUFFICIENT HATCH TENTS TO COVER ALL HATCHES - NO
H)ELECTRICALLY VENTILATED IN ALL HOLDS - YES
NUMBER OF AIRCHANGES PER HOUR BASIS EMPTY HOLDS      – 6
NUMBER OF FANS – 20 AND OUTLETS EACH COMPARTMENT    -- 4
NOT FITTED WITH SHAFT GENERATOR
CO2 FITTED IN ALL CARGO COMPARTMENTS
CARGO BATTENS FITTED PERMANENTLY
FULLY FITTED FOR PANAMA CANAL, SUEZ CANAL
NOT FITTED FOR ST.LAWRENCE GREAT LAKES
LAST DRYDOCK                              NOV 2001

3

# EXHIBIT "B"

80 Broad str., Monrovia, Liberia
Mailing address : 20 Smyrnis str., Glyfada Therpsisea, 165 62 Athens, Greece
Tel. +30 210 9859808  Fax. +30 6972830704, e-mail: vos@otenet.gr

## LIST OF DD SPARES PAID BY VOYAGER OCEAN SERVICES LTD

| DD SPARES | | | | | | | |
|---|---|---|---|---|---|---|---|
| | P.O. 123 R | | | | | 400 | |
| | P.O. 03-09 ITEM 56 | | | | 348 | | |
| | KATRADIS | | | | | 3875,5 | |
| | KORONAKIS | | | | | 10866,4 | |
| | LOIGO | | | | | 16381,77 | |
| | MAN | | | | | 5222,66 | |
| | DMI | | | | | 8838 | |
| | LOCKWOOD | | | | | | 1131,44 |
| | FUNDITESSA | | | | | 29665 | |
| | NEPTUNE | | | | | 705 | |
| | TURMAR | | | | | 1774 | |
| | MSS | | | | 9200 | 10384 | |
| | MILONAS | | | | | 709 | |
| | LINCOLN | | | | | | 4158 |
| | PO 03-09 ITEM 69 | | | | | 209 | |
| | POM 08-09 | | | | | 763 | |
| | BARLETTI | | | | 1440 | | |
| | ROLLS-ROYCE | | | | | 289,4 | |
| | DSF | | | | 2555 | | |
| | ASCARGO | | | | | 25171,68 | |
| | DENWILL | | | | | 7603,185 | |
| | GRAND TOTAL ESTIMATION | | | | 13543 | 122857,6 | 5289,44 |
| | TOTAL SPARES USD FOV | | | | 197521,8 | | |

# EXHIBIT "C"

80 Broad str., Monrovia, Liberia
Mailing address : 20 Smyrnis str., Glyfada Therpsisea, 165 62 Athens, Greece
Tel. +30 210 9859808  Fax. +30 6972830704, e-mail: vos@otenet.gr

### SUMMARY OF ORDINARY SPARES, STORES AND TOOLS
### ON BOARD MV DONBASS ON REDELIVERY 11.07.09

|   |   |   | USD | EUR | GBP |
|---|---|---|---|---|---|
|   |   |   |   |   |   |
|   | 1 | MAIN ENGINE |   | 0 | 119599,6 | 3928,6 |
|   | 2 | AUX.ENGINES | 5445,33 | 16482,53 | 3341,67 |
|   | 3 | DECK AND CRANES | 5726,04 | 35026,04 |   |
|   |   |   |   |   |   |
|   | **TOTAL** |   | **11171,37** | **171108,2** | **7270,27** |

|   | USD Equivalent | 11171,37 | 239551,48 | 12359,46 |
|---|---|---|---|---|
|   | **USD TOTAL** | **263082,31** |   |   |

E.+O.E

SPARES ON REDELIVERY MAIN ENGINE

| № | ITEMS | QTY | PRICE USD | PRICE EURO | TOTAL EUR | TOTAL USD |
|---|---|---|---|---|---|---|
| 1 | 2 | 7 | 8 | 9 | 10 | |
| 1 | MAN-BAZAN 12V40/54A | 2 | | | 0 | 0 |
| 2 | | 2 | | 5589.00 | 11178 | 0 |
| 3 | CYLINDER LINER | 2 | | 2700.00 | 5400 | 0 |
| 4 | PISTON SKIRT | 5 | | 3840.00 | 19200 | 0 |
| 5 | PISTON CROWN (HEAD) | 1 | | 2882.00 | 2882 | 0 |
| 6 | CRANKROD "A" side (Muster's) | 1 | | 2882.00 | 2882 | 0 |
| 7 | CRANKROD "B" side (Slave) | 4 | | | 0 | 0 |
| 8 | CAMSHAFT GEAR | 1 | | 643.00 | 643 | 0 |
| 9 | CRANK BEARING BODY | 2 | | | 0 | 0 |
| 10 | CRANKROD LOWER SHELL "A" side | 2 | | | 0 | 0 |
| 11 | CRANKROD UPPER BEARING "A" side | 1 | | 495.00 | 495 | 0 |
| 12 | CRANKROD PIN (UPPER) "A" side | 2 | | | 0 | 0 |
| 13 | CRANKROD SHELL | 1 | | | 0 | 0 |
| 14 | EXHAUST TRUNK COMPENSATOR | 2 | | | 0 | 0 |
| 15 | AIR SIDE COMPENSATOR FOR TURBOCHARGER | 2 | | | 0 | 0 |
| 16 | STARTING VALVE ASSAMBLED | 3 | | | 0 | 0 |
| 17 | SAFETY VALVE ASSAMBLED | 3 | | | 0 | 0 |
| 18 | H.P.F.O.P. ASSAMBLED | 2 | | | 0 | 0 |
| 19 | PUSHROD | 5 | | 550.00 | 2750 | 0 |
| 20 | SPINDEL INLET VALVE | 1 | | | 0 | 0 |
| 21 | CASING PUSHROD FOR H.P.F.O.P. | 22 | | 189.00 | 4158 | 0 |
| 22 | GUIDE BUSH INLET VALVE | 28 | | 620.00 | 17360 | 0 |
| 23 | EXHAUST MANEFOLD GASKET | 8 | | 465.00 | 3720 | 0 |
| 24 | SEAT OF SUCTION  VALVE или  INLET VALVE S | 4 | | 27.60 | 110.4 | 0 |
| 25 | CRANKROD BOLT (SHORT) | 8 | | 95.00 | 760 | 0 |
| 26 | CRANKROD BOLT (LONG)  MIDDLE | 10 | | 178.00 | 1780 | 0 |
| 27 | CYL. LINER STEEL SEALING RING | 3 | | | 0 | 0 |
| 28 | SAFETY STOP-LEVER FOR H.P.F.O.P. | 2 | | 860.00 | 1720 | 0 |
| 29 | TURBOCHARGER BEARING | 2 | | | 0 | 0 |
| 30 | TURBOCHARGE LABIRINTH SEALING | 1 | | 90.00 | 90 | 0 |
| 31 | EXHAUST GASES THERMOMETER | 6 | | 110.00 | 660 | 0 |
| 32 | CHROME COMPRESSED PISTON RING-8 MM | 14 | | 126.00 | 1764 | 0 |
| 33 | CHROME COMPRESSED PISTON RING H-8,5 MM | 17 | | 114.00 | 1938 | 0 |
| 34 | CHROME COMPRESSED PISTON RING H-9,0 MM | 12 | | 132.00 | 1584 | 0 |
| 35 | CHROME COMPRESSED PISTON RING H-9,5 MM | 12 | | 180.00 | 2160 | 0 |
| 36 | CHROME COMPRESSED PISTON RING H-10,0 MM | 10 | | 91.34 | 913.41 | 0 |
| 37 | BIMETAL COMPRESSED PISTON RING H=8 MM | 4 | | 91.34 | 365.36 | 0 |
| 38 | BIMETAL COMPRESSED PISTON RING H=8,5 MM | 22 | | 91.34 | 2009.48 | 0 |
| 39 | BIMETAL COMPRESSED PISTON RING H=9,5 MM | 3 | | 24.00 | 72 | 0 |
| 40 | CAST IRON PISTON'S COMPRESSED RING H=8 M | 3 | | 24.00 | 72 | 0 |
| 41 | CAST IRON PISTON'S COMPRESSED RING H=8,5 | 9 | | 24.00 | 216 | 0 |
| 42 | CAST IRON PISTON'S COMPRESSED RING H=9,0 | 5 | | 24.00 | 120 | 0 |
| 43 | CAST IRON PISTON'S COMPRESSED RING H=10 | 1 | | 24.00 | 24 | 0 |
| 44 | CAST IRON PISTON'S COMPRESSED RING H=12 | 12 | | 12.80 | 153.6 | 0 |
| 45 | L.O RING CAST IRON H12 | 6 | | 8.30 | 49.8 | 0 |
| 46 | RUBBER SEALING FOR VALVE STEM (SPINDEL) | 20 | | 41.00 | 820 | 0 |
| 47 | RUBBER SEALING FOR EXHAUST VALVE CASING | 4 | | 2.50 | 10 | 0 |
| 48 | RUBBER SEALING FOR STARTING VALVE | | | | | |

| # | Description | Qty | | | | |
|---|---|---|---|---|---|---|
| 49 | RUBBER SEALING FOR PISTON | 4 | | 33.00 | 132 | 0 |
| 55 | SEALING RING H.P.F.O.P. 200.05.1196 | 12 | | | 0 | 0 |
| 56 | SEALING RING FOR STEERING GEAR | 2 | | 730.00 | 1460 | 0 |
| | **AIRCONDITIONER** | | | | 0 | 0 |
| 57 | MAIN BEARING | 2 | | | 0 | 0 |
| 58 | PISTON ASSAMBLE | 1 | | | 0 | 0 |
| 59 | GASKET FOR COVER | 2 | | | 0 | 0 |
| 60 | SOLENOID VALVE | 2 | | 102.00 | 204 | 0 |
| 61 | SOLENOID COIL | 1 | | 56.00 | 56 | 0 |
| 62 | INFRA-RED REMOTE CONTROL THERMOMETER | 1 | | | 0 | 0 |
| | **REFREGERATOR** | | | | 0 | 0 |
| 65 | LUB.OIL PUMP | 1 | | | 0 | 0 |
| 66 | VALVE PLATE | 4 | | 117.00 | 468 | 0 |
| 67 | TRV (THERMOREGULATING VALVE) | 3 | | | 0 | 0 |
| 68 | FREON MANOMETOR FOR F 22 | 6 | 166 | | 0 | 996 |
| 69 | THERMOSTATE RT.3 | 4 | 373 | | 0 | 1492 |
| 70 | DRYING FILTER ASSAMBLE FOR F-22 | 3 | 128 | | 0 | 384 |
| 71 | INSERT FOR DRY F-22 FILTER | 7 | 28 | | 0 | 196 |
| 72 | VALVE BML-12 | 2 | 72.9 | | 0 | 145.8 |
| 73 | VALVE BML-10 | 7 | 63.6 | | 0 | 445.2 |
| 74 | VALVE BML-6 | 2 | 48.9 | | 0 | 97.8 |
| | **TOOLS** | | | | 0 | 0 |
| 155 | BALL BEARING 6213 M | 2 | | 118.81 | 237.62 | 0 |
| 156 | BALL VEARING 6014 M | 1 | | 118.81 | 118.81 | 0 |
| 157 | BALL BEARING2308M | 1 | | 51.71 | 51.71 | 0 |
| 158 | BALL BEARING 225147M | 1 | | | 0 | 0 |
| 159 | FLEXABLE CONNECTION | 2 | | 20.00 | 40 | 0 |
| 160 | GATE VALVE BRONZE 1 1/2' | 1 | | 335.00 | 335 | 0 |
| 161 | **FW PUMP CGB-100** | | | | 0 | 0 |
| 162 | FRESH WATER PUMP CGB-100 IMPELLER | 1 | | 750.00 | 750 | 0 |
| 163 | SEALING RING BRONZE FOR IMPELLER | 2 | | 44.00 | 88 | 0 |
| 164 | MECHANICAL SEALINGS (SET) | 2 | | 106.25 | 212.5 | 0 |
| 166 | ASBESTOS SHEET 3 X 1000 MM | 3 | | 48.00 | 144 | 0 |
| 174 | DEVCON (LICQUID STEEL) | 4 | | 32.40 | 129.6 | 0 |
| 175 | TEFLON (SEALING) | 6 | | 0.22 | 1.302 | 0 |
| 176 | SILICON-340 (SEALING) | 4 | | 1.76 | 7.04 | 0 |
| 195 | BEARING 6212 ZZ | 1 | | 19.16 | 19.16 | 0 |
| 196 | BEARING 62206 ZZ | 2 | | 4.48 | 8.96 | 0 |
| 197 | BEARING 6411 | 1 | | 45.25 | 45.25 | 0 |
| 198 | BEARING 6401 | 2 | 5.6 | | 0 | 11.2 |
| 199 | BEARING 6310 | 1 | 32.75 | | 0 | 32.75 |
| 200 | BEARING 6311 | 2 | 39.45 | | 0 | 78.9 |
| 201 | BEARING 6307 | 3 | 14.25 | | 0 | 42.75 |
| 202 | BEARING 6410 | 2 | | 41.08 | 82.16 | 0 |
| 203 | BEARING 6203 | 2 | 3.1 | | 0 | 6.2 |
| 204 | BEARING 7210 B | 2 | | 24.95 | 49.9 | 0 |
| 205 | PROTECTING SEALING PASTE | 20 | | | 0 | 0 |
| 206 | STEEL PLATE THICKNESS-10 MM | 2 | | 200.00 | 400 | 0 |
| 207 | BRONZE VALVE DIA-40 | 1 | | | 0 | 0 |
| 208 | BRONZE VALVE DIA-25 | 1 | | | 0 | 0 |
| 209 | STEEL PIPE DIA -1/2 | 4 | | 40.00 | 160 | 0 |
| 210 | STEEL PIPE DIA -1/4 | 2 | | 40.00 | 80 | 0 |
| 211 | LEVEL SENSOR | 2 | | 308.00 | 616 | 0 |
| 212 | MECHANICAL SEALING PAKING FOR SEA WATE | 1 | | 106.25 | 106.25 | 0 |
| 213 | CUTTING DISK | 17 | | 6.20 | 105.4 | 0 |

| | | | | | |
|---|---|---|---|---|---|
| 214 | POLISHING DISK | 13 | | 5.80 | 75.4 | 0 |
| 215 | OXIGAN BALLONS | 14 | | 260.00 | 3640 | 0 |
| 216 | ACETILENE BOTTLE BALLONS | 7 | . | 260.00 | 1820 | 0 |
| 217 | FREON BALLONS | 8 | | 260.00 | 2080 | 0 |
| 218 | AZOT BALLON | 1 | | 260.00 | 260 | 0 |
| | | | | | | 0 |
| | GASKET CYLINDER COVER | 10 | | 24.00 | 240 | 0 |
| | MAIN BEARING SHELL | 2 | 0 | 2149.90 | 4299.8 | 0 |
| | MAIN BEARING THRUST SHELL | 2 | | 2069.84 | 4139.68 | 0 |
| | PLANGER AND BARREL | 7 | | 635.00 | 4445 | 0 |
| | EXHAUST VALVES | 11 | | 1736.00 | 19096 | 0 |
| | | | | | | |
| | TOTAL ME | | | | 134264.6 | 3928.6 |

|  | USD | EUR | GBP |
|---|---|---|---|
| **INVENTORY ON DELIVERY 2004** | | | |
| ITEMS 7,10, 11, 13, 14 | | 20531 | |
| | | | |
| **IN FAVOR OF CHARTERERS** | | 119599.6 | 3928.6 |

**SPARES ON REDELIVERY AUX. ENGINES**

| # | ITEMS | QTY | PRICE USD | PRICE EUR | PRICE GBP | TOTAL USD | TOTAL EUR | TOTAL GBP |
|---|---|---|---|---|---|---|---|---|
| 1 | 2 | 6 | 8 | 9 | 10 | | | |
| 1 | (NTA855-G3)I LEVER FOR INJECTOR | 3 | | 314.24 | | 0 | 942.72 | 0 |
| 2 | VALVE LEVER | 5 | | 60.00 | | 0 | 300 | 0 |
| 3 | CRANK BEARING LOWER 1ST UNDERSIZ | 1 | 251.76 | 0.00 | 0 | 251.76 | 0 | 0 |
| 4 | CRANK ROD BEARING LOWER 2ND UND | 1 | 135 | | | 135 | 0 | 0 |
| 5 | STANDARD CRANK ROD BEARING LOWE | 2 | 87 | | | 174 | 0 | 0 |
| 6 | MAIN BEARING STANDARD | 1 | 135.28 | | | 135.28 | 0 | 0 |
| 7 | CRANKSHAFT MAIN BEARING 2 UNDERS | 1 | 284.24 | | | 284.24 | 0 | 0 |
| 8 | ADJUSTED GASKET FOR CRANKSHAFT | 6 | | 7.20 | | 0 | 43.2 | 0 |
| 9 | GASKET 30676616 | 2 | | 0.00 | 32 | 0 | 0 | 64 |
| 10 | AIR COOLER GASKET | 15 | | 0.80 | | 0 | 12 | 0 |
| 11 | GASKET 3067618 | 2 | | | 32 | 0 | 0 | 64 |
| 12 | LUBOIL COOLER GASKET | 1 | | 10.90 | | 0 | 10.9 | 0 |
| 13 | CYLINDER LINER SEALING (GASKET) | 22 | | 14.80 | | 0 | 325.6 | 0 |
| 14 | CILYNDER LINER | 13 | | 210.00 | | 0 | 2730 | 0 |
| 15 | GASKET STEEL 3054948 | 10 | | 4.30 | | 0 | 43 | 0 |
| 16 | BY-PASS VALVE SEALING | 6 | | | 4 | 0 | 0 | 24 |
| 17 | BY-PASS VALVE PLUG SEALING | 11 | | 1.05 | | 0 | 11.55 | 0 |
| 18 | INJECTORS CONNECTING CLUMP | 2 | | | 9.2 | 0 | 0 | 18.4 |
| 19 | L.O. PIPE 3056559 | 2 | | 94.30 | | 0 | 188.6 | 0 |
| 20 | BEARING 218153 | 6 | | 8.70 | | 0 | 52.2 | 0 |
| 21 | THRUST BEARING FOR CRANKSHAFT | 3 | | 11.80 | | 0 | 35.4 | 0 |
| 22 | FUEL OIL PUMP BEARING | 3 | | 54.00 | | 0 | 162 | 0 |
| 23 | SEALING 3045979 | 1 | | 82.30 | | 0 | 82.3 | 0 |
| 24 | THERMOVALVE 3023512 | 0 | | | | 0 | 0 | 0 |
| 25 | FUEL OIL GEAR BEARING | 1 | | 27.00 | | 0 | 27 | 0 |
| 26 | TACHOGENERATOR GEAR | 1 | | 40.88 | | 0 | 40.88 | 0 |
| 27 | PUSHING ROLLER FOR VALVE | 5 | | 0.70 | | 0 | 3.5 | 0 |
| 28 | SHAFT SEALING FOR TACHOGENERATO | 3 | | 3.20 | | 0 | 9.6 | 0 |
| 29 | SEALING 43463-A | 1 | | 42.00 | | 0 | 42 | 0 |
| 30 | ROOLER PIN FOR PUSHING VALVE | 8 | | 1.40 | | 0 | 11.2 | 0 |
| 31 | BELT 217638 | 3 | | 31.48 | | 0 | 94.44 | 0 |
| 32 | GASKET 3024960 | 2 | | 0.00 | 4.15 | 0 | 0 | 8.3 |
| 33 | SEALING 3071085 | 5 | | | 0.8 | 0 | 0 | 4 |
| 34 | BEARING 3063246 | 4 | | | 8.46 | 0 | 0 | 33.84 |
| 35 | REPAIR KIT 3801712 | 1 | | | 97 | 0 | 0 | 97 |
| 36 | CRANK ROD 3013930 | 8 | | 15.80 | | 0 | 126.4 | 0 |
| 37 | PISTON 3801819 | 18 | | 310.00 | | 0 | 5580 | 0 |
| 38 | PISTON P[IN 191970 | 6 | | 58.74 | | 0 | 352.44 | 0 |
| 39 | BEARING 187420 | 4 | | 12.60 | | 0 | 50.4 | 0 |
| 40 | L.O. COOLER CASING 3052210 | 1 | 234 | | | 234 | 0 | 0 |
| 41 | CYLINDER COVER GASKET 3047402 | 3 | | | 9 | 0 | 0 | 27 |
| 42 | ROKER CAP GASKET.3054841 | 12 | | 5.68 | | 0 | 68.16 | 0 |
| 43 | GASKET 201048 | 3 | 10.9 | | | 32.7 | 0 | 0 |
| 44 | TURBINE IMPELLER 3522075 | 1 | 350 | | | 350 | 0 | 0 |
| 45 | NUT 3529372 | 1 | | 3.80 | | 0 | 3.8 | 0 |
| 46 | GASKET 190849 | 2 | | | 8.1 | 0 | 0 | 16.2 |
| 47 | RUBBER RING 3751948 | 2 | 8 | | | 16 | 0 | 0 |
| 48 | TURBOCHARGER BEARING 3722366 | 7 | | 20.71 | | 0 | 144.97 | 0 |

| No | Description | Qty | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 49 | THRUST BEARING 3536075 | 9 | | 27.65 | | 0 | 248.85 | 0 |
| 50 | SAFETY RING TURBOCHARGER 3718373 | 2 | | | 0.8 | 0 | 0 | 1.6 |
| 51 | VALVE GUIDER | 32 | | 2.50 | | 0 | 80 | 0 |
| 52 | FIXING NUT 3519471 | 1 | 6 | | | 6 | 0 | 0 |
| 53 | TURBOCHARGER FIXING RING 3709510 | 4 | | | 0.5 | 0 | 0 | 2 |
| 54 | FIXING RING 3521442 | 3 | | 6.61 | | 0 | 19.83 | 0 |
| 55 | FIXING RING TCH.3723883 | 1 | | 5.80 | | 0 | 5.8 | 0 |
| 56 | SPRING 3035996 | 22 | | 10.00 | | 0 | 220 | 0 |
| 57 | AKTUATOR 3408326 | 1 | | 1520.00 | | 0 | 1520 | 0 |
| 58 | ROKER 3028293 | 1 | | 1838.60 | | 0 | 1838.6 | 0 |
| 59 | WASHER 3046246 | 10 | | | 0.65 | 0 | 0 | 6.5 |
| 60 | TACHGENERATOR SHAFT  212607 | 2 | 439.49 | | | 878.98 | 0 | 0 |
| 61 | FUEL OIL PUMP VALVE 3018453 | 0 | | | | 0 | 0 | 0 |
| 62 | INJECTOR PACKING 3070486 | 5 | | 8.20 | | 0 | 41 | 0 |
| 63 | GASKET 3049187 | 8 | | | 8.21 | 0 | 0 | 65.68 |
| 64 | RUBBER RING 3052586 | 12 | | 0.90 | | 0 | 10.8 | 0 |
| 65 | RUBBER RING 3052587 | 8 | | 0.70 | | 0 | 5.6 | 0 |
| 66 | RUBBER RING 131026 | 21 | | 0.85 | | 0 | 17.85 | 0 |
| 67 | INJECTOR JOINT 3054260 | 16 | | 3.80 | | 0 | 60.8 | 0 |
| 68 | WASHER 3069182 | 4 | | | 0.65 | 0 | 0 | 2.6 |
| 69 | CRANK CASE GASKET 3068463 | 1 | | 7.50 | | 0 | 7.5 | 0 |
| 70 | RUBBER RING 3029847 | 1 | | 1.80 | | 0 | 1.8 | 0 |
| 71 | RUBBER RING 3034986 | 6 | | 9.26 | | 0 | 55.56 | 0 |
| 72 | RUBBER RING 3037537 | 0 | | 8.30 | | 0 | 0 | 0 |
| 73 | CRANKROD BOLT 3349806 | 6 | | | 9 | 0 | 0 | 54 |
| 74 | INLET VALVE 13590057 | 25 | | | 7 | 0 | 0 | 175 |
| 75 | EXHAUST VALVE  3040830 | 26 | | | 7 | 0 | 0 | 182 |
| 76 | INLET VALVE SEATS 200354 | 24 | | 48.50 | | 0 | 1164 | 0 |
| 77 | INLET VALVE SEAT.200354 | 26 | | 38.50 | | 0 | 1001 | 0 |
| 78 | FIXING BOLT FOR INJECTOR 3058686 | 5 | | 2.36 | | 0 | 11.8 | 0 |
| 79 | ROCKER CASE 3047479 | 1 | | | 255 | 0 | 0 | 255 |
| 80 | GASKET 3020943 | 13 | | | 7.5 | 0 | 0 | 97.5 |
| 81 | ROKER SHAFT 3038904 | 1 | | | 255 | 0 | 0 | 255 |
| 82 | BOLT 3010589 | 6 | | 0.30 | | 0 | 1.8 | 0 |
| 83 | GASKET 3062354 | 6 | | | 1.6 | 0 | 0 | 9.6 |
| 84 | ROCKER CASE ASSY 3052170 | 0 | | 0.00 | | 0 | 0 | 0 |
| 85 | PUSHROD LEVER VALVE 3046420 | 5 | | 66.00 | | 0 | 330 | 0 |
| 86 | PUSHROD LEVER INJECTOR 3046430 | 3 | 20.93 | | | 62.79 | 0 | 0 |
| 87 | L.O. FILTER | 66 | | 72.50 | | 0 | 4785 | 0 |
| 88 | F.O. FILTER LARGE | 52 | | 15.50 | | 0 | 806 | 0 |
| 89 | F.O. FILTER SMALL | 57 | | 11.40 | | 0 | 649.8 | 0 |
| 90 | FUEL OIL JOINT CONNECTION 147100 | 0 | | 57.32 | | 0 | 0 | 0 |
| 95 | CRANKSHAFT SEALING 3006737 | 5 | 19.51 | | | 97.55 | 0 | 0 |
| 96 | SOLENOID 30021420 | 2 | | | 37.5 | 0 | 0 | 75 |
| 98 | CAMSHAFT BEARING | 1 | | 270.00 | | 0 | 270 | 0 |
| 99 | F.O. PUMP SEALING.3062676 | 6 | | 60.00 | | 0 | 360 | 0 |
| 100 | RUBBER RING 139988 | 1 | | 0.30 | | 0 | 4.56 | 0 |
| 102 | GASKET 3069103 | 3 | | 1.52 | | 0 | 3.63 | 0 |
| 103 | GASKET 3063052 | 3 | | 1.21 | | 0 | 11.6 | 0 |
| 104 | RUBBER RING 151900 | 2 | | 5.80 | | 0 | 7.4 | 0 |
| 105 | RUBBER RING 100099 | 2 | | 3.70 | | 0 | 0 | 252 |
| 106 | L.O. FILTER CONNCTION.3052211 | 2 | | | 126 | 0 | 55 | 0 |
| 107 | GASKET 3070478 | 5 | | 11.00 | | 0 | 0 | 9.15 |
| 108 | BY-PASS VALVE SPRING.3030803 | 1 | | | 9.15 | 0 | 16.46 | 0 |
| 109 | BY-PASS VALVE PISTON.3030804 | 1 | | 16.46 | | 0 | 0 | 0 |

| No. | Description | Qty | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 110 | BY-PASS VALVE PISTON.3030805 | 1 | | | 8 | 0 | 0 | 8 |
| 111 | BY-PASS VALVE PLUNGER 3030806 | 1 | | 5.00 | | 0 | 5 | 0 |
| 112 | BY-PASS VALVE SPRING 3039296 | 2 | | | 14 | 0 | 0 | 28 |
| 113 | RUBBER RING 3018695 | 2 | | | 1.2 | 0 | 0 | 2.4 |
| 114 | GASKET 3069014 | 1 | | | 6.4 | 0 | 0 | 6.4 |
| 115 | L.O. COOLER COVER 3069079 | 1 | | | 46 | 0 | 0 | 46 |
| 116 | GASKET 3008017 | 1 | | 3.35 | | 0 | 3.35 | 0 |
| 117 | GASKET 3047464 | 4 | | 2.70 | | 0 | 10.8 | 0 |
| 118 | GASKET 3014778 | 3 | | 5.52 | | 0 | 16.56 | 0 |
| 119 | GASKET 3067613 | 3 | | 2.91 | | 0 | 8.73 | 0 |
| 120 | BY-PASS VALVE 3884126 | 1 | | | 16 | 0 | 0 | 16 |
| 121 | BY-PASS VALVE SPRING 3010146 | 1 | 5.02 | | | 5.02 | 0 | 0 |
| 122 | RUBBER RING 145504 | 8 | | 3.38 | | 0 | 27.04 | 0 |
| 123 | PLUG 3012726 | 2 | 10.1 | | | 20.2 | 0 | 0 |
| 124 | SAFETY VALVE WASHER 146161 | 2 | 0.95 | | | 1.9 | 0 | 0 |
| 125 | BOLT 3022589 | 2 | | | 1.55 | 0 | 0 | 3.1 |
| 126 | GASKET 3047465 | 2 | | 2.73 | | 0 | 5.46 | 0 |
| 127 | ROLLER INJECTORS PIN 118939 | 26 | 33.67 | | | 875.42 | 0 | 0 |
| 128 | INJECTOR SHAFT ROLLER 3013330 | 7 | 13.17 | | | 92.19 | 0 | 0 |
| 129 | RUBBER RING 3007442 | 0 | | 0.00 | | 0 | 0 | 0 |
| 130 | INJECTOR PUSHROD ROLLER 3036934 | 2 | 13.17 | | | 26.34 | 0 | 0 |
| 131 | RUBBER PIPE 3220664 | 3 | | 25.12 | | 0 | 75.36 | 0 |
| 132 | RUBBER PIPE AK-6013 | 1 | | 53.50 | | 0 | 53.5 | 0 |
| 133 | RUBBER PIPE 3056150 | 1 | | 21.30 | | 0 | 21.3 | 0 |
| 134 | RUBBER PIPE 3820664 | 8 | | 25.12 | | 0 | 200.96 | 0 |
| 135 | RUBBER PIPE 3071160 | 5 | | 63.20 | | 0 | 182.25 | 0 |
| 136 | RUBBER PIPE3060613 | 3 | | 60.75 | | 0 | 129.14 | 0 |
| 137 | RUBBE RPIPE 209957 | 1 | | 129.14 | | 0 | 119.06 | 0 |
| 138 | RUBBER PIPE AK-4014 | 2 | | 59.53 | | 0 | 61.84 | 0 |
| 139 | RUBBER PIPE AK-4021 | 1 | | 61.84 | | 0 | 94.58 | 0 |
| 140 | RUBBER PIPE AK-10012SS | 1 | | 94.58 | | 0 | 54.64 | 0 |
| 141 | RUBBER PIPE AK-4005SS | 1 | | 54.64 | | 0 | 14.4 | 0 |
| 143 | RUBBER RING 3029847 | 8 | | 1.80 | | 0 | 49.84 | 0 |
| 144 | RUBBER RING 3034986 | 8 | | 6.23 | | 0 | | 0 |
| 146 | CAMSHAFT 3801668 | 1 | | | 400 | 0 | 0 | 400 |
| 151 | THERMOSTAT | 3 | 373 | 0.00 | | 1119 | 764.45 | 0 |
| 152 | THERMOSTAT CASE 3064209 | 1 | | 764.45 | | 0 | 971.9 | 0 |
| 153 | THERMOSTAT CASING 3028213 | 1 | | 971.90 | | 0 | | 0 |
| | **AIR COMPRESSOR** | | | | | | | |
| 154 | 1 STAGE SUCTION VALVE | 2 | | 73.35 | | 0 | 146.7 | 0 |
| 156 | 2ND STAGE DELIVERY VALVE | 3 | | 56.00 | | 0 | 168 | 0 |
| 160 | CYLINDER COVER GASKET | 1 | | 4.80 | | 0 | 4.8 | 0 |
| 162 | COMPRESSED RING 1ST STAGE | 1 | | 16.00 | | 0 | 16 | 0 |
| 163 | COMPRESSED RING 2ND STAGE | 4 | | 3.70 | | 0 | 14.8 | 0 |
| 164 | LO RING 1ST STAGE | 1 | | 4.40 | | 0 | 4.4 | 0 |
| 165 | ASSABLED PISTON | 1 | | 184.00 | | 0 | 184 | 0 |
| 166 | L.O. FILTER 1004-108 | 2 | | | 44.5 | 0 | 0 | 89 |
| 168 | BEARING 6308 | 2 | | 45.50 | | 0 | 91 | 0 |
| 169 | BEARING 2308 | 2 | | 54.00 | | 0 | 108 | 0 |
| 170 | BEARING 6213 | 1 | | 123.00 | | 0 | 123 | 0 |
| 171 | BEARING 6015 | 1 | | 142.50 | | 0 | 142.5 | 0 |
| 172 | BEARING 6014 | 1 | | 126.00 | | 0 | 126 | 0 |
| 173 | BEARING 225147 | 3 | | 112.00 | | 0 | 336 | 0 |
| 174 | DYNAMOMETRIC SPANER | 2 | 180 | | | 360 | 0 | 0 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 175 | PISTON RING 11.5мм | 1 | | | 47 | 0 | 0 | 47 |
| 178 | PISTON RING | 14 | | | 12.6 | 0 | 0 | 176.4 |
| 182 | BEARING FOR FW PUMP | 4 | 71.74 | | | 286.96 | 0 | 0 |
| 200 | AMORTIZATION PADS | 12 | | 0.00 | 60 | 0 | 0 | 720 |
| | | | | | | 0 | 0 | 0 |
| 201 | SPINDEL EXH VALVE | 23 | | 15.00 | | 0 | 345 | 0 |
| 202 | SPINDEL INLET VALVE | 24 | | 22.00 | | 0 | 528 | 0 |
| 203 | WATER PUMP SHAFT | 5 | | 415.00 | | 0 | 2075 | 0 |
| 204 | WATER PUMP BEARING | 2 | | 58.50 | | 0 | 117 | 0 |
| | | | | | | 0 | 0 | 0 |
| | | | | | | 0 | 0 | 0 |
| | | | | | | 5445.33 | 32822.96 | 3341.67 |
| | TOTAL AE | | | | | | | |

|  | USD | EUR | GBP |
|---|---|---|---|
| SPARES ON DELIVERY 2004 | 22876.6 | | |
| AUX ENGINE | | | |
| BALANCE IN CHARTERERS FAVOR | 5445.33 | 16482.53 | 3341.67 |

**SPARES ON REDELIVERY DECK AND CRANES**

| №п/п | ITEMS | Оказ. в наличии | PRICE (USD) | PRICE EUR | TOTAL USD | TOTAL EUR |
|---|---|---|---|---|---|---|
| 1 | 2 | 7 | 8 | 9 | 10 | |
| 1 | BEARING 6024 | 1 | 284.14 | | 284.14 | 0 |
| 2 | BEARING 30224 | 2 | 201.75 | 0.00 | 403.5 | 0 |
| 3 | bearing 30222 | 3 | 870 | 0.00 | 2610 | 0 |
| 4 | BEARING 32224 | 2 | 361.6 | 0.00 | 723.2 | 0 |
| 5 | BEARING 51224 | 3 | | 60.71 | 0 | 182.13 |
| 6 | BEARING 6412 | 3 | 195.4 | | 586.2 | 0 |
| 7 | BEARING 51315 | 2 | | 69.79 | 0 | 139.58 |
| 8 | BEARING 6224 | 4 | 187 | | 748 | 0 |
| 9 | BEARING 6024 | 1 | 284.14 | | 284.14 | 0 |
| 10 | BEARING 6316 | 2 | 131 | | 262 | 0 |
| 11 | BELT A-67 | 0 | 10.89 | | 0 | 0 |
| 12 | FERADO BELT 120x12 | 14.14 | | 120.00 | 0 | 1696.8 |
| 13 | FERADO BELT 100x12 | 2.5 | | 100.00 | 0 | 250 |
| 14 | FERADO BELT 76x12 | 3 | | 76.00 | 0 | 228 |
| 15 | FERADO BELT 1100x90X12 | 1.1 | | 82.00 | 0 | 90.2 |
| 16 | FERADO BELT 1400x90X12 | 1.4 | | 82.00 | 0 | 114.8 |
| 17 | FERADO BELT 1100x120X12 | 1.1 | | 120.00 | 0 | 132 |
| 18 | FERADO BELT 1450x120X12 | 1.45 | | 120.00 | 0 | 174 |
| 19 | RUBBER RING 194x5,7 | 7 | | 1.50 | 0 | 10.5 |
| 20 | RUBBER RING 269x280X5,7 | 25 | | 3.80 | 0 | 95 |
| 21 | RUBBER RING 63x4 | 21 | | 0.30 | 0 | 6.3 |
| 22 | RUBBER RING 119X7 | 12 | | 3.00 | 0 | 36 |
| 23 | RUBBER RING 106X8 | 49 | | 0.64 | 0 | 31.36 |
| 24 | RUBBER RING 95x5,5 | 64 | | 0.26 | 0 | 16.64 |
| 25 | RUBBER RING 22,2x3 | 100 | | 0.08 | 0 | 8 |
| 26 | RUBBER RING 60x5 | 29 | | 0.26 | 0 | 7.54 |
| 27 | RUBBER RING 22x2,5 | 22 | | 0.08 | 0 | 1.76 |
| 28 | RUBBER RING 140x154X7 | 4 | | 4.50 | 0 | 18 |
| 29 | RUBBER RING 130x146X8 | 2 | | 4.50 | 0 | 9 |
| 30 | RUBBER RING 140x6 | 19 | | 1.75 | 0 | 33.25 |
| 31 | RUBBER RING 279,3x5,7 | 3 | | 4.10 | 0 | 12.3 |
| 32 | RUBBER RING 209x5,7 | 3 | | 3.70 | 0 | 11.1 |
| 33 | RUBBER RING 115x5 | 28 | | 0.53 | 0 | 14.84 |
| 34 | RUBBER RING 34x4 | 4 | | 0.17 | 0 | 0.68 |
| 35 | RUBBER RING 36x3,5 | 13 | 5.3 | 0.00 | 68.9 | 0 |
| 36 | RUBBER RING 107,32x5,33 | 17 | | 2.80 | 0 | 47.6 |
| 37 | SEALING RING 8x14X4 | 50 | | 1.45 | 0 | 72.5 |
| 38 | SEALING RING 150x180X15 | 8 | | 8.60 | 0 | 68.8 |
| 39 | SEALING RING 120x10X12 | 0 | | 6.90 | 0 | 0 |
| 40 | SEALING RING 110x130X12 | 15 | | 4.00 | 0 | 60 |
| 41 | SEALING RING 110x130X12 | 3 | | 4.00 | 0 | 12 |
| 42 | SEALING RING 90x110X10 | 7 | | 5.50 | 0 | 38.5 |
| 43 | SEALING RING 120x140X12 | 12 | | 9.50 | 0 | 114 |
| 44 | SEALING RING 120x140X15 | 8 | | 10.00 | 0 | 80 |
| 45 | SEALING RING 25x35X7 | 0 | | 1.75 | 0 | 0 |
| 46 | SEALING RING 40x62X7 | 1 | | 2.60 | 0 | 2.6 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 47 | SEALING RING 63,5x85,5X12,7 | 1 | | 3.00 | 0 | 3 |
| 48 | SEALING RING 28x40X8 | 3 | | 1.70 | 0 | 5.1 |
| 49 | SEALING RING 35x51x6 | 10 | 0.16 | | 1.6 | 0 |
| 50 | SEALING RING 36x50x10 | 5 | 0.16 | | 0.8 | 0 |
| 51 | SEALING RING  36x50X7 | 5 | 0.16 | | 0.8 | 0 |
| 52 | SEALING RING 30x50x7 | 6 | 0.16 | | 0.96 | 0 |
| 53 | SEALING RING 95x120x12 | 1 | | 2.60 | 0 | 2.6 |
| 54 | SEALING RING 50x65x8 | 1 | | 0.30 | 0 | 0.3 |
| 55 | PLASTIC RING100x120x10 | 4 | 9 | 0.00 | 36 | 0 |
| 56 | SEALING RING 180x150x15 | 8 | 8.6 | | 68.8 | 0 |
| 57 | Hydraulik pump sealing ring for cargo hold c | 9 | | 0.14 | 0 | 1.26 |
| 58 | Sealing ring for cargo hold cover's jack 40x5 | 37 | | 1.36 | 0 | 50.32 |
| 59 | Sealing ring 70x88x12 | 4 | | 49.50 | 0 | 198 |
| 60 | Sealing ring 120x150x12 | 5 | | 6.12 | 0 | 30.6 |
| 61 | Sealing ring 160x190x15 | 1 | | 9.50 | 0 | 9.5 |
| 62 | Sealing ring 34x50x10 | 8 | | 1.30 | 0 | 10.4 |
| 63 | Sealing ring 40x56x10 | 5 | | 1.38 | 0 | 6.9 |
| 64 | Sealing ring 30x40x10 | 0 | | 1.90 | 0 | 0 |
| 65 | Sealing ring 30x40x7 | 5 | | 1.90 | 0 | 9.5 |
| 66 | Hydraulik joint dia=37,5мм | 4 | | 170.00 | 0 | 680 |
| 67 | Hydraulik joint d=1/2 " | 20 | | 20.00 | 0 | 400 |
| 68 | Hydraulik joint d=36мм | 12 | | 150.00 | 0 | 1800 |
| 69 | Hydraulik joint d=30мм | 2 | | 130.00 | 0 | 260 |
| 70 | Hydraulik joint d=33мм | 9 | | 135.00 | 0 | 1215 |
| 71 | Hydraulik joint d=37мм | 6 | | 165.00 | 0 | 990 |
| 72 | Hydraulik joint d=29,5 | 29 | | 130.00 | 0 | 3770 |
| 73 | Cone sealing ring d=22 mm | 20 | | 95.00 | 0 | 1900 |
| 74 | Cone sealing ring d=28мм | 20 | | 105.00 | 0 | 2100 |
| 75 | Hydraulik joint d=2/3" | 34 | | 25.00 | 0 | 850 |
| 76 | Hydraulik joint d=1"8/16 | 49 | | 20.00 | 0 | 980 |
| 77 | Hydraulik joint  d=51,5мм | 1 | | 210.00 | 0 | 210 |
| 78 | Sealing ring d=16мм | 90 | | 2.60 | 0 | 234 |
| 79 | Cone sealing ring d=21мм | 50 | | 3.00 | 0 | 150 |
| 80 | Cone sealing ring d=38мм | 10 | | 4.50 | 0 | 45 |
| 81 | Coner Hydraulik joint=10мм | 3 | | 65.00 | 0 | 195 |
| 82 | Hydraulik joint d=28мм | 20 | | 87.00 | 0 | 1740 |
| 83 | Hydraulik joint d=10мм | 5 | | 112.00 | 0 | 560 |
| 84 | Hydraulik joint d=15мм | 30 | | 78.00 | 0 | 2340 |
| 85 | Coner Hydraulik joint d=10мм | 10 | | 65.00 | 0 | 650 |
| 86 | Coner Hydraulik joint d=15мм | 15 | | 78.00 | 0 | 1170 |
| 87 | Threeangle joint d=3/4" | 4 | | | 0 | 0 |
| 98 | Manipulator for Cargo-hold Hatch cover | 1 | | 270.00 | 0 | 270 |
| 99 | water gauge special glass 320x33.5x17.5 | 2 | | 8.96 | 0 | 17.92 |
| 100 | Hydraulik unit spring cargo crane №3,4 | 9 | | 268.00 | 0 | 2412 |
| 101 | Spring Cruder for cargo crane raire | 2 | | 0.00 | 0 | 0 |
| 102 | cargo crane spring for disk brake unin | 70 | | 8.00 | 0 | 560 |
| 103 | Mechanical sealing 38.5x24.7 | 1 | | | 0 | 0 |
| 104 | Aux boiler injector's unit | 1 | | | 0 | 0 |
| 105 | injector spray F80  30* | 2 | | | 0 | 0 |
| 106 | injector spray  45* | 1 | | | 0 | 0 |
| 107 | injector spray 60* | 1 | | | 0 | 0 |
| 110 | Impeller for Pump MZ –412L | 2 | | 300.00 | 0 | 600 |
| 111 | Pump cover MZ –412L | 1 | | 132.00 | 0 | 132 |
| 112 | Hexagon bolts special M12 | 100 | | 20.30 | 0 | 2030 |
| 113 | Round head bolts M16x2x50 | 30 | | 0.60 | 0 | 18 |

| | | | | | |
|---|---|---|---|---|---|
| 114 | Таблетки щёлочности анализ кот, воды | 4 | 62.00 | 0 | 248 |
| 115 | Таблетки определения хлорид, кот.вод | 4 | 62.00 | 0 | 248 |
| 116 | Hydraulik pipe d=15x2 | 18 | 20.00 | 0 | 360 |
| 117 | Hydromotor ГК 1622 | 1 | | 0 | 0 |
| 118 | HYDRAULIK JACKS | 8 | 175.00 | 0 | 1400 |
| 119 | Гидромотор открытия трюмов | 1 | | 0 | 0 |
| 120 | rubber pipe | 20 | 12.00 | 0 | 240 |
| 124 | Sealing ring 100x120x12 | 10 | 6.90 | 0 | 69 |
| 125 | Sealing ring 40x50x7 | 113 | 0.22 | 0 | 24.86 |
| 126 | Sealing ring  60x80x10 | 18 | 0.40 | 0 | 7.2 |
| 127 | Sealing ring 50x70x10 | 17 | 0.40 | 0 | 6.8 |
| | | | | 0 | 0 |
| | TOTAL | | | 6089.04 | 35026.04 |

**SPARES ON DELIVERY 2004**                              USD        EUR

ITEMS 1, 4, 8                                                     363

**BALANCE IN CHARTERERS FAVOR**                 5726.04   35026.04

# EXHIBIT "D"

**From:** Catriona Lewis <catriona.lewis@laxlaw.co.uk>

**To:** mni@cometas.net
**Cc:** Tom Crampton <Tom.Crampton@laxlaw.co.uk>
**Date:** Thursday, August 06, 2009 08:07 am
**Subject:** MV "DONBASS" C/P dated 16 June 2004
**Attachments:** 📎 DRY DOCK SPARES DONBASS.pdf (298KB)
📎 ORDINARY SPARES DONBASS.pdf (4MB)

Dear Sirs

**Bareboat charterparty dated 16 June 2004**

We are London solicitors acting for Voyager Ocean Services Limited in relation to disputes with you, Cometas, under the above charterparty.

As our clients (Charterers) have advised you, they are claiming for spares which are currently on board the vessel. Those spares, as detailed in the attached documents, total USD 460,604.11 in value (comprising Drydock spares of USD197,521.80 plus ordinary spares of USD263,082.31) and are Charterers' property. Charterers are therefore entitled to seek compensation for the value of those spares. If you wish to enter some arrangement with your current bareboat charterers in respect of the amounts due, that is up to you, but our clients' claim is against you as Owners of the vessel.

Please can we now have your confirmation that you will remit the above sums due to our clients, or, if your clients have any sensible offer to make in this regard, then our clients would be willing to listen. If we do not hear from you constructively by 12 noon London time tomorrow, we shall have no alternative but to take security as necessary.

Best regards

Lax & Co
78 Cornhill
London EC3V 3QQ
Tel: +44 (0) 20 7623 9432